## No. C-435

Western Electric Company, Incorporated, a New York corporation, and The Mountain States Telephone and Telegraph Company, a Colorado corporation v. Hugh H. C. Weed, Jr., Director of Revenue of the State of Colorado

(524 P.2d 1369)

Decided July 15, 1974.                    Rehearing denied August 6, 1974.

Rovira, DeMuth & Eiberger, Lael S. DeMuth, Stuart S. Gunckel, for plaintiffs-appellants.

John P. Moore, Attorney General, John E. Bush, Deputy, Chris J. Eliopulos, Special Assistant, James A. Clark, Special Assistant, Bruce D. Pringle, Special Assistant, for defendant-appellee.

MR. JUSTICE HODGES delivered the opinion of the Court.

Pursuant to Colorado Appellate Rules (C.A.R. 50), we granted appellants' petition for certiorari to the Colorado Court of Appeals prior to argument and judgment in that court.

This case involves the Colorado sales and use tax laws. C.R.S. 1963, 138-5-2 and 138-5-34.

Appellants Western Electric and Mountain Bell contend that they are not subject to sales and use tax on the purchase by Mountain Bell from Western Electric and others of telephone instruments and other items used directly in providing telephone service to Mountain Bell's customers. Specifically, they assert that the processing clause of the sales and use tax statutes exempts them from paying these taxes on the purchase of such items.

As an alternate issue, it is asserted that the sales and use tax statutes, if applied to the appellants in connection with such purchases, are unconstitutional because they deny to the appellants equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

Also, the appellants take issue with the imposition of interest and penalties on the assessment made by the director of revenue for the unpaid sales and use taxes.

When these appellants did not include sales and use tax on the purchase of these items in their tax returns to the Department of Revenue for the month of October 1971, the appellee director of revenue made assessments therefor which also included the imposition of interest and penalties against the appellants.

These assessments were challenged by the appellants in an action filed in the district court. After a trial de novo, the district court entered its judgment upholding the assessments made by the director of revenue. From this judgment, the appellants appeal and urge reversal.

We find that the trial court's judgment was a proper disposition on the issues presented and we therefore affirm the judgment.

I.

Of the issues presented in this appeal, the most significant is in regard to the appellants' contention that they are exempt from the collection and payment of sales and use taxes on purchases by Mountain Bell from Western Electric and other firms of items used directly in providing telephone service.

In this case, it is Western Electric which maintains that it is not required to collect sales tax from Mountain Bell when Mountain Bell purchases such items from it in Colorado because of Mountain Bell's exemption from the sales tax under the provision of the processing clause. On the other hand, it is Mountain Bell which contends that it is exempt from paying use tax when it purchases such items from firms outside of Colorado for use or consumption in Colorado.

The following fact situation makes up the posture upon which a determination must be made on this issue.

In October 1971, Mountain Bell purchased from Western Electric and other firms telephone instruments, station apparatus, cable, wire, conduit, telephone poles, crossarms, directories, switching equipment, and other related appara-

tus. During that same month, Mountain Bell purchased from Western Electric and other firms many other items of tangible personal property, such as, office supplies, tools, automobiles, trucks and similar items. In accordance with previous notifications to the Department of Revenue when Western Electric filed its sales tax return and Mountain Bell filed its use tax return for the month of October 1971, only the purchases of tangible personal property, such as, office supplies, tools, automobiles, trucks and similar items were reported on these returns and the appropriate tax paid thereon. The purchases of telephone instruments, station apparatus, cable, wire, conduit, telephone poles, crossarms, directories, switching equipment, and other related apparatus used directly in providing telephone service, were not reported on the grounds that the purchases of those items are exempt under the so-called processing clause of the sales tax and use tax statutes.

The processing clause of the sales tax law (C.R.S. 1963, 138-5-2(14)) and the processing clause of the use tax law (C.R.S. 1963, 138-5-34(7)) provide that the purchase of tangible personal property which enters into the processing of or becomes an ingredient or component part of the product or service is deemed to be a wholesale purchase and consequently, exempt from sales and use tax. The subsections setting forth the processing clause of the sales tax law and the processing clause of the use tax law are set forth in the following two paragraphs.

It should be noted that the wording of the processing clause as to both the sales tax and the use tax is identical. With regard to the sales tax, C.R.S. 1963, 138-5-2(14) provides that:

"Sales to and purchases of tangible personal property by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity, which tangible personal property enters into the processing of or becomes an ingredient or component part of the product or service which is manufactured, compounded or furnished and the container, label, or the furnished shipping

case thereof, shall be deemed to be wholesale sales and shall be exempt from taxation under sections 138-5-1 to 138-5-32."

C.R.S. 1963, 138-5-34(1) and (7) states that authorization to impose a use tax shall not apply

"To the storage, use or consumption of tangible personal property by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity, which tangible personal property enters into the processing of or becomes an ingredient or component part of the product or service which is manufactured, compounded or furnished and the container, label or the furnished shipping case thereof."

In this discussion, Rule 54 promulgated by the Department of Revenue must be considered. It states that those rendering services "must pay the sales and use tax on the purchase of all tangible personal property used in performing a service, unless otherwise exempt." It is obvious that Rule 54 points directly to the processing clauses for guidance in determining what tangible personal property is exempt from sales and use tax.

At the trial, the witnesses presented by Western Electric and Mountain Bell explained generally the basic components of the telephone system and how it works. A description was given as to how a subscriber's voice when directed into a telephone instrument is converted into electrical impulses which are carried from the subscriber's telephone along wires strung on telephone poles or buried in conduit to a switching location known as the central office. At this point, the equipment directs the electrical impulses by means of a switching device directly to the called party's telephone receiver or to another central office where the final connection is made to the called party. Upon answering the call, the called party's telephone instrument converts the electrical impulses back to vibrations which are capable of being heard and understood by a human ear. The equipment which is necessary to amplify and boost the electrical impulses as they proceed through the wires was also described. It was

explained how many messages may be joined together on a single circuit and later unscrambled by a carrier device. It was noted that in the case of long distance telephone calls, the transmission of the voice or other sounds may be carried by microwave which is essentially a radio transmission from one point to another. It was explained that the various items of purchased equipment and apparatus sought to be exempt are all telephone network components which are essential to and directly involved in the telephone service supplied by Mountain Bell to its subscribers.

On cross-examination, appellants' witnesses, and on direct examination, appellee's witnesses testified that all of these items of equipment and apparatus remain at all times in the ownership of Mountain Bell, are depreciated for tax purposes, and the cost thereof is included in the rate base upon which telephone charges are determined.

It is conceded that the purchases upon which an exemption is sought fall within the general definition of retail sales and do not meet the definition of wholesale sales. No resale of these items by Mountain Bell to its subscribers is contemplated or ever effectuated. See definitions in C.R.S. 1963, 138-5-2(5) and (6) and *Herbertson v. Cruse*, 115 Colo. 274, 170 P.2d 531 (1946) which deals with the difference between a wholesale and retail sale under the sales tax statutes.

Therefore, the crucial issue as presented in this appeal is whether these sales to Mountain Bell shall be deemed to be wholesale sales and thus exempt under the processing clause of the sales and use tax provisions of C.R.S. 1963, 138-5-2 (14) and 138-5-34(7) as set forth previously herein. In resolving this issue, we are concerned with the meaning of the phrase "enters into the processing of" which will henceforth be referred to as the "processing clause."

The appellants contend that the items in question enter into the processing of the telephone service which Mountain Bell provides to its subscribers. More specifically, they argue that the phrase "enters into the processing of" must be defined as meaning either "employed in connection with the

processing of" or "consumed in the processing of." It is the director of revenue's position, on the other hand, that the processing clause means that the purchased items must become a physical part of the product or service rendered by either chemical or mechanical means. The Department of Revenue's position in this regard is clearly set forth in regulation 138-5-2(14) of the Colorado Sales Use Tax and Store Licensing Rules and Regulations promulgated by the Department of Revenue.

Although *Bedford v. Colorado Fuel & Iron Corporation,* 102 Colo. 538, 81 P.2d 752 (1938) defines the processing clause in connection with a product rather than a service, it clearly sustains the position of the director of revenue. In that case, Colorado Fuel and Iron Corporation claimed, *inter alia,* that items such as hay fed to mine mules, refractories used in steel furnaces, trucks, chemicals, tools, machinery, and related items were exempt from taxes under the processing provision. It argued that such tangible property as is necessarily used or consumed in the manufacturing process is not subject to the tax. The trial court had held in the *Bedford* case that those items of tangible personal property directly and proximately used in the process of manufacture were exempt from tax but that those items which were only indirectly consumed in the process of manufacture were taxable. On appeal, this court reversed the trial court and held that the items of tangible personal property directly used in the manufacturing process were not exempt under the processing clause. In reversing the trial court, this court held that there were only two types of tangible personal property exempt under the processing clause: (1) tangible personal property which becomes an ingredient or component part of the product, and (2) tangible personal property which enters into the processing of the product which was manufactured. Colorado Fuel and Iron Corporation conceded that the articles in question did not become an ingredient or component part of the product, since their identity could be factually established without difficulty. Thus, the only question remaining was whether

the items in question entered into the processing of the end products manufactured by Colorado Fuel and Iron Corporation. In holding that such items were not exempt under the processing clause, this court in *Bedford* defined "enters into the processing of" as follows:

"[t]angible personal property purchased by a manufacturer and which enters into the processing of the manufactured product, must become a constituent part thereof, wholly or partially, by either chemical or mechanical means."

■ In applying the above definition to the many items of equipment directly utilized by Mountain Bell in providing telephone service, it can be readily recognized that none of these items become a constituent part of the service rendered. In other words, the telephone service which is provided does not include any ingredient from any of these items. Chemicals and insecticides which are used in the business of providing a spraying service for crops are an example of commodities which would be exempt. On the other hand, the vehicles, implements, and other apparatus which are required in providing this service are not exempt.

In *Bedford,* this court discussed a number of separate reasons for its holding. Each of these reasons is equally applicable to the instant case. First, this court in *Bedford* considered the dictionary meaning of the words "enters into." The court noted that the ordinarily accepted meaning of the word "enters" when used with the preposition "into" implies that the thing which enters and penetrates becomes a part of and an ingredient of the thing produced.

Secondly, in *Bedford,* this court stated that its interpretation of the processing clause was based also upon the doctrine of legislative confirmation. It was stated that shortly after the enactment of the sales tax act, the treasurer, who at that time was charged with the collection of sales tax, promulgated a regulation with respect to the processing clause. This regulation provided that sales of tangible personal property to a manufacturer, a producer, or processor, which tangible personal property is used or consumed but does not enter into the actual processing and does

become an ingredient or component part of the commodity or service manufactured, produced or furnished, are taxable.

In *Bedford,* it was noted that after the above referred to regulation had been in effect for almost two years, the general assembly re-enacted the sales tax act making no change whatever in the processing clause of the act. Thus, legislative confirmation of this interpretation was indicated. We note in the instant case that from 1938, when the *Bedford* case was announced to the present time, the director of revenue has followed the *Bedford* interpretation and at no time has the legislature over the years seen fit to amend the sales and use tax laws to specify any different interpretation. It therefore can now be said that this interpretation is strongly entrenched in our law by the doctrine of legislative confirmation. *See* our recent case of *Music City, Inc. v. Estate of James Duncan, Deceased,* 185 Colo. 245, 523 P.2d 983.

We also note in *Bedford* that the court discussed in detail the purpose for the processing exemption in order to determine its proper scope. The taxpayer in *Bedford,* as in the instant case, argued that the purpose of the processing clause was to avoid the pyramiding of sales tax and that since a tax was collected on the ultimate product (or, in this case, on the ultimate service rendered), the equipment, apparatus, and other items of tangible personal property utilized in manufacturing that product (or rendering that service) should be tax exempt. In the *Bedford* opinion, the court agreed that the general purpose of the processing clause was to avoid the pyramiding of sales tax but further indicated that if all property employed or consumed in processing the final product was tax exempt, the processing clause would virtually wipe out sales tax with respect to any item purchased by a manufacturing business.

Similarly, in the instant case, the appellants recognize that if their contention was to be carried through to its ultimate logical conclusion, every item which Mountain Bell purchases would be tax exempt, including desks, stationery, automobiles, tools, office supplies and similar items. However, in

order to avoid this problem, appellants in their argument adopt the position that only those items used directly in providing telephone service are tax exempt. The appellants attempt to make a distinction between those articles which are used directly in connection with the providing of telephone service and those items which are used only indirectly. Such a distinction was specifically rejected in *Bedford* as being incapable of practical application. This court in *Bedford* stated:

"Possibly with these things in mind the trial court attempted to place a restriction upon the construction of the company to the extent of declaring that to be exempt the articles must be *proximately* used in connection with the manufacturing operations. This interpretation merely imposed a rule of relativity, which clearly is not warranted by the terms of the act nor by any implication which can be drawn therefrom. The attempted application of such a rule would leave the administration of the act, the officers charged with this duty and the taxpayers, in a state of marginal uncertainty in that as to each of the divers articles purchased or used in connection with any manufacturing business, the degree of proximity to the final product which would control the tax status could not be ascertained by any definite formula."

Another reason given for the conclusion reached in the *Bedford* case is of considerable significance. The *Bedford* court considered the predecessor to C.R.S. 1963, 138-5-2(15) which was identical to the current provision dealing with the exemption for sales of "electricity, coal, gas, fuel oil, and coke used. in the processing, manufacturing, mining, refining, irrigation, building construction, telegraph, telephone and radio communication . . .". The *Bedford* court determined that if the taxpayers' position was sustained, the processing clause would automatically exempt all the items contained in Section 15 and that therefore there would have been no reason to include Section 15 in the statute.

As indicated previously herein, the only distinction between the *Bedford* case and the instant case is that the *Bedford* case involved property purchased in connection with

manufacturing while the instant case involves property employed in providing a service. Throughout the appellants' arguments, it appears rather clearly that they are contending that the phrase "enters into the processing of" has a different meaning when applied to an enterprise providing a service than it does when it applies to a manufacturing business. We can find no support whatsoever for this position in our statutes or in case law. Also, there has been no showing that the legislature intended the phrase to have two separate meanings depending whether it was applied to products or services. On the contrary, it would seem evident that if the legislature had intended that equipment employed in providing a service was to be treated differently than equipment employed in manufacturing, it would not have made the processing clause applicable to both. We hold that the processing clause of the sales and use tax statutes applies in the same way to both manufacturing firms and to those engaged in the business of providing a service.

We have noted from the record, the testimony and the exhibit which reveals that in June 1939, Mountain Bell sought a ruling from the attorney general regarding the applicability of the processing clause exemption. Byron G. Rogers, who was then attorney general, rendered an opinion stating that the exemption was not applicable to the items purchased by Mountain Bell and employed in the process of providing telephone service. The attorney general cited the *Bedford* case in support of his opinion. This is mentioned herein merely to point out that for many years Mountain Bell, and its principal supplier Western Electric, have abided by the interpretation of the processing exemption which has existed and has been applied to all organizations providing a service for over 30 years.

■ In our view, the *Bedford* case establishes the proper interpretation to be given to the processing clause of the sales and use tax laws in the state of Colorado when applied to businesses providing a service. It is of interest to note the Kansas decision of *Southwestern Bell Tel. Co. v. State Commission,* 168 Kan. 227, 212 P.2d 363 (1949) which

holds that the Kansas processing clause in its taxing statutes, which are almost identical with our statutes, is interpreted in the same way as we have herein held. In that case, the telephone company presented substantially the same arguments as presented on behalf of the appellants here. The Supreme Court of Kansas held that the subject telephone equipment was not exempt from sales tax because it did not become a constituent part of the service rendered either by chemical or mechanical means. The court also found that the equipment which was used by the telephone company in providing telephone service was not purchased for resale and that this fact also was critical in arriving at its conclusion. It is interesting to note that the Supreme Court of Kansas in the *Southwestern Bell* case relied rather heavily upon our *Bedford* case. *See also* 47 Am. Jur. *Sales and Use Taxes* § 21 which sets forth a discussion of the meaning of the phrase "enters into the processing of" which also appears in the sales and use tax laws of other states.

The appellants have placed strong reliance upon our holding in *Carpenter v. Carman Distributing Co.,* 111 Colo. 566, 144 P.2d 770 (1943). In that case, the taxpayer, a laundry and dry cleaner, claimed that its purchases of soap, starches, solvents, clothes, buttons, and thread used in cleaning and repairing clothes were exempt from the sales tax under the processing clause. In that case, our court held that these purchases were taxable, but narrowed the holding to state that since the taxpayer was providing a service, and since the processing clause was not applicable to service enterprises which in turn were not subject to the sales tax act, the processing clause of the sales tax act did not apply.

In the instant case, it is undisputed that if the telephone equipment and apparatus in question was covered by the processing exemptions, it would have been exempt from taxation. Our court in the *Carman* case declined to make a ruling on the question of whether the items in question "enters into the processing of" the service furnished by the taxpayer. The *Carman* case leaves open the question which is presented in this case and therefore it is of no assistance in resolving the issue presented here.

## II.

The appellants maintain that the imposition of a sales and use tax on Mountain Bell's purchase of telephone equipment and apparatus constitutes a denial of equal protection under the Fourteenth Amendment of the United States Constitution. This claim is made on the basis of the fact that a company known as C.I.T. Leasing Corporation does not pay a sales tax when it purchases similar telephone equipment. It is the appellants' position that both Mountain Bell and C.I.T. Leasing Corporation put the telephone equipment to identical use and therefore, sales and use tax is unconstitutionally imposed on the purchases by Mountain Bell.

C.R.S. 1963, 138-5-2(17) provides as follows:

"When right to continuous possession or use of any article of tangible personal property is granted under a lease or contract and such transfer of possession would be taxable if outright sale were made, such lease or contract shall be considered the sale of such article, and the tax shall be computed and paid by the vendor upon the rentals paid."

It is the position of Mountain Bell that it should be treated in the same manner in connection with the payment and collection of sales and use taxes as C.I.T. Leasing Corporation, although Mountain Bell does not give possession of any articles of tangible personal property to its subscribers under any lease or contract as does C.I.T. Leasing Corporation. Essentially, it is the appellants' position that it is constitutionally improper to distinguish for the purposes of sales or use taxation between companies which lease and sell equipment to their customers and companies, such as Mountain Bell, which merely allow the customers to use the equipment and apparatus. In our view, this argument misconceives the proper scope of the equal protection clause and disregards the cases which have interpreted it.

It is well established that the legislature may classify for the purpose of taxation so long as the classification is a reasonable one, *e.g., Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938), and *New York Rapid Transit Corp. v. City of New York,* 303 U.S. 573, 58 S.Ct. 721, 82 L.Ed. 1024 (1938). The requirements of constitutional equal

protection are met when (1) the legislative classification bears some reasonable relationship to a legitimate state interest, and (2) all persons within a class are treated in the same manner.

■ There is an ample basis for finding a legitimate state interest in treating differently those who award possession under a lease or contract as against those who do not. If the taxing statutes we are here concerned with merely provided for a tax on retail sales, the incidents of the tax could be easily avoided by transferring property to the ultimate customers by means of a long term lease or rental agreement. In order to cut off this possibility, the legislature enacted C.R.S. 1963, 138-5-2(17), and thus provided that a transfer of tangible personal property by means of a lease or rental agreement should be considered a sale for tax purposes.

The record also demonstrates that any company which leases, rents under contract, or sells telephone equipment and apparatus is treated identically for tax purposes, and that Mountain Bell and any other company which does not lease, rent under contract, or sell telephone equipment and apparatus, are justifiably and constitutionally treated in a different manner. We conclude that there is no deprivation of any of the appellants' constitutional rights.

III.

■ The appellants next argue that the trial court erred in imposing interest penalties of one-half-percent per month. The interest penalty was in addition to the six percent per annum on any deficiency pursuant to C.R.S. 1963, 138-9-8. Appellants have no objection to the automatic interest amount and it will not be discussed further.

1965 Perm. Supp., C.R.S. 1963, 138-5-17 provides:

"*Deficiency due to negligence.* If any part of the deficiency is due to negligence or intentional disregard of authorized rules and regulations with knowledge thereof, but without intent to defraud, there shall be added ten per cent of the total amount of the deficiency, and interest in such case shall be collected at the rate of one-half per cent per month, in addition to the interest provided by section 138-9-8 . . . .".

Prior to October 1971, the appellants paid the taxes in question for many years. As previously stated, the said taxes were purposely excluded in the October 1971 sales and use tax returns filed by the appellants. In December 1971, the Department of Revenue issued a notice of deficiency. Appellants argue that the statute was not intended to so penalize a taxpayer who has a good faith dispute on a legal question. The statute, however, in plain and clear language, imposes the penalty upon an intentional but non-fraudulent avoidance of the tax. Here, the appellants intentionally decided not to pay the taxes in issue. *See American Airlines, Inc. v. City of St. Louis,* Mo., 368 S.W.2d 161 (1963). The statute provides an even more severe penalty for the taxpayer who fraudulently fails to pay his tax. In order to avoid the penalty imposed by C.R.S. 1963, 138-5-17, the taxpayer need only pay the tax under protest and then seek judicial review.

Judgment affirmed.

Mr. CHIEF JUSTICE PRINGLE, MR. JUSTICE GROVES and MR. JUSTICE ERICKSON do not participate.