## No. 26866

**American Mobile Home Association, Inc., a Colorado Corporation; David L. Chatfield, J. Maxene Chatfield, LeRoy C. Huskey, Rosetta L. Huskey, John Ferguson, Bernice V. Ferguson, Donald R. Carson, Victoria V. Carson, Stacha L. Douglas, W. Dean Spiker, Dorothy L. Spiker, Grace Crimshaw, Douglas G. Blankenship, Marian A. Blankenship, Charles F. Latham, Frances M. Latham, Iris O'Connor, individually and on behalf of all other persons similarly situated v. Joseph Dolan, Executive Director, Colorado Department of Revenue; Norman C. Allen, Jefferson County Clerk and Recorder, Donald Couch, Jefferson County Treasurer; and all other persons in similar official capacities**

(553 P.2d 758)

Decided August 23, 1976.

434

Kelly, Haglund & Garnsey, Norman D. Haglund, for plaintiffs-appellees.

J. D. MacFarlane, Attorney General, James A. Clark, Special Assistant, Bruce Pringle, Special Assistant, for defendants-appellants.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

This is an appeal from a judgment of the district court declaring unconstitutional, in its application, the ad valorem tax imposed on certain types of mobile homes, or so-called "movable structures." We reverse.

The disputed tax statute was enacted by the legislature in response to the rapid evolution of mobile homes into residential housing of a substantially permanent and immobile nature. Previously, these movable structures had not been subject to a property tax such as is levied upon more conventional residences. The legislature accordingly placed an ad valorem tax on certain large mobile homes or movable structures, and it eliminated the graduated specific ownership tax previously imposed on such homes. See section 42-3-101(3) and sections 39-5-201 *et seq.*, C.R.S. 1973.

A "movable structure" was defined as "any wheeled vehicle exceeding either eight feet in width or thirty-two feet in length excluding towing gear and bumpers, without motive power, which is designed and commonly used for occupancy by persons for residential purposes, in either temporary or permanent locations, and which may be drawn over the public highways by a motor vehicle." Section 39-1-102(8), C.R.S. 1973. These structures were to be taxed on an assessed value of 30% of their actual value, as determined by depreviation tables, and were to be collected by the department of revenue.

By comparison, conventional residences are valued by individualized appraisals and the taxes imposed on them are assessed by the respective county assessors in each county. By statute, the taxes on such homes are to be levied according to 30% of their actual value. Section 39-1-104(1), C.R.S. 1973. However, the parties in this case have stipulated that county assessors in practice have used a considerably smaller percentage of actual value to arrive at the taxable value for conventional residences.

Plaintiffs-appellees, individually and on behalf of the class of similarly circumstanced owners of movable structures, brought this suit to challenge the constitutionality of the purported higher taxes falling on movable structures than on conventional residences. The district court found this de facto disparity in tax rates to be contrary to the legislative intent to treat both movable structures and conventional residences uniformly. It therefore held that the tax on movable structures, in excess of the tax actually imposed on conventional residences of equal value, violated the Uniformity of Taxation Clause, *Colo. Const.* Art. X, § 3, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The court also held that the use of a standard depreciation schedule, rather than the individual appraisal method, for determining the actual value of movable structures was arbitrary and capricious and therefore unconstitutional. Finally, it ruled that the owners of movable structures were denied equal protection of the law because they, unlike owners of conventional residences, had no procedures available to them to protest erroneous assessments.

This case only pertains to those taxes assessed in 1974. In 1975, the Colorado legislature repealed the ad valorem tax on movable structures and re-imposed a specific ownership tax on them. Colo. Sess. Laws 1975, ch. 343, § 30 at 1473.

## I.

The trial court held that it was the legislative intent to impose a taxing scheme that was uniform on both movable structures and conventional residences. It based this finding primarily on the language of section 42-3-101(3), C.R.S. 1973, which states:

"It is further declared that the unique nature of movable structures requires that, while the registration requirements of this article are appropriate for the identification of such structures, the continued development of such structures into residential housing of a more permanent and immobile nature requires that such structures be made subject to the ad valorem method of taxation in a manner similar to the taxation of other more permanent structures used for residential purposes."

Because this section stated that movable structures were to be taxed in a method "similar" to that for more conventional residences, the trial court concluded that different tax rates between the two structures was unconstitutional.

In our view, however, the legislature did not intend to place movable structures and conventional residences into the same taxable class. The above quoted section was merely a legislative declaration that movable structures should be taxed on an ad valorem basis as are more conventional residences, but it did not either explicitly or implicitly state that movable structures must be treated on a parity with conventional residences. Because two types or classes of property are both subjected to

an ad valorem taxing scheme does not preclude the legislature from applying different rates and different means for determining value. *See, e.g., People ex rel. Iron Silver Min. Co. v. Henderson*, 12 Colo. 369, 21 P. 144 (1888).

That the legislature did intend to place movable structures into a different taxable class is demonstrated by the different procedures it established to assess and collect ad valorem taxes and the separate statutory treatment it gave to movable structures. For example, section 39-5-201, C.R.S. 1973 declared that "by reason of the unique nature of such property [movable structures], administration of the imposition and collection of such tax can best be accomplished by the department of revenue acting through its authorized agents in each county," rather than the county assessor. Section 39-5-203, C.R.S. 1973, *infra*, requires that the value of movable structures be computed by a standard depreciation schedule, rather than by individualized appraisals. Finally, section 39-5-204, C.R.S. 1973, requires that taxes on movable structures be payable in just one installment on January 1 of each year, and that delinquent taxes be collected by distraint, seizure, and sale of the movable structures — again, unlike the case of conventional houses.

■ Because the legislature treated movable structures as a distinct class for purposes of assessment and collection, the ensuing happenstance of higher taxable rates on such structures is not critical, so long as these rates are imposed uniformly on the class or type of property involved. In *District 50 Metropolitan Recreation District v. Burnside*, 167 Colo. 425, 448 P.2d 788 (1968), the controlling principle of law applicable here is set forth as follows:

"Under the 'uniformity of taxation' clause of the state constitution, as well as the 'due process of law' and the 'equal protection of the law' provisions relied on by the plaintiffs, the legislature is not prohibited from defining 'various *classes* of real and personal property,' which may be taxed for a specific purpose. The uniformity which is required is that all persons who are members of any class, or all property logically belonging in a given classification, shall receive equal treatment to that accorded all other persons or property in the same class. . . ."

Consequently, after deciding that movable structures have been placed in a separate class for taxation, we need now only decide whether the legislature *could* have constitutionally treated and classified movable structures differently than conventional residences.

■ In taxation, even more than in other fields, the legislature has greater freedom to classify. *Austin v. New Hampshire*, 420 U.S. 656, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975); *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). *See also Western Electric Co. v. Weed*, 185 Colo. 340, 524 P.2d 1369 (1974). Under the Uniformity of Taxation Clause of the Colorado Constitution as

well as the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the legislature may make classifications in the area of taxation so long as the classification is a reasonable one and not palpably arbitrary. *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); *Western Electric Co. v. Weed, supra*. If the classification conceivably rests upon some reasonable considerations of difference or policy, there is no constitutional violation. The burden is therefore on the one attacking the classification to negative every conceivable basis which might support it, at least where no fundamental right is imperiled. *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

■ The different treatment afforded to movable structures here could conceivably have been based on their mobility or the greater density of the neighborhoods where they are located and the proportionately greater need for governmental services. As a result, the legislature could, and did, place these movable structures into its own generic class for tax purposes. Maladministration in the assessment of conventional residences can therefore be of no consequence to the legitimacy of the tax imposed on movable structures.

## II.

The trial court also ruled that the standard depreciation method used for valuing mobile structures was arbitrary and capricious because it violated the requirement that property be taxed in relation to its true value Section 39-5-203(1)(a) and (b), C.R.S. 1973, establishes the following method for determining the taxable value of movable structures:

"The gross property value of each movable structure . . . shall be the factory list price thereof, but if the factory list price of such item is unavailable, then the gross property value shall be an amount equal to seventy-five percent of its retail delivered price, exclusive of any state and local sales taxes. In either case, the gross property value shall be reduced by twenty percent, such percentage being hereby declared to represent the [exempt] value of the household furnishings. . . . The resulting figure shall be the net property value of the item. . . .

"The applicable depreciation factor [computed from a schedule furnished by the department of revenue] shall be applied to the net property value of each movable structure, and the resulting figure shall be the actual value, upon which figure the valuation for assessment of each movable structure shall be based."

Appellees argue that the trial court properly found such a method to be arbitrary because the standardized depreciation schedule did not account for the individual differences in value caused by factors other than age, which factors are taken into account when assessing conventional residences.

We have previously held, though, that exact uniformity or mathematical accuracy in tax valuations is not required. *Cf., People ex rel. Iron Silver Min. Co. v. Henderson, supra. See also Lehnhausen v. Lake Shore Auto Parts Co., supra.* The use of a standard depreciation schedule to determine taxable value is therefore not arbitrary just because individual variations in value may occur. Rather, it can constitute a reasonable method of appraising value where, as here, mass produced, fungible items, are involved.

### III.

The perceived lack of procedures for protesting erroneous assessments, otherwise available to owners of conventional residences, was another reason cited by the trial court for holding the tax discriminatory with regard to movable structures.

The appellees, however, never have alleged in this suit that their assessments were erroneous, except by way of generally attacking the use of the depreciation schedule. Since they have no grievance as to any assessed valuations, appellees' complaint concerning the available protest procedures is premature and hence, not properly postured on this appeal. *Compare, Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 550 P.2d 866 (1976).

In any event, we believe that such procedures do exist. Although it does not appear that the movable structure owners can protest their valuations to the county assessor, at least when their homes are valued by using the depreciation schedule, section 39-8-102, C.R.S. 1973, states that the boards of equalization of each county shall review the valuations for assessment of *all taxable property* appearing in the assessment rolls of the county, which property necessarily includes movable structures. Further appeals are provided to the appeals board of assessment and the district court by section 39-8-108, C.R.S. 1973. Though owners of movable structures must pay their taxes before their appeals, section 39-8-109, C.R.S. 1973, provides that they can recover costs and a refund with interest of any overpaid taxes from the appeals board or the district court. Thus, the differences that may exist in the assessment protest procedures for movable structures and conventional residences are not unreasonable and result, in part, from the unique nature of movable structures as discussed above.

We therefore hold that the subject statute was constitutional. We therefore reverse the judgment of the trial court.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE LEE do not participate.