WALGREEN COMPANY, an Illinois corporation, Plaintiff–Appellant,

v.

Alan N. CHARNES, Manager of Revenue for the City and County of Denver, State of Colorado, and City and County of Denver, a Municipal corporation, Defendants–Appellees.

No. 92CA0730.

Colorado Court of Appeals, Div. I.

Dec. 3, 1992.

Rehearing Denied Dec. 31, 1992.

Certiorari Denied Sept. 27, 1993.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

County of Denver. We affirm in part and remand with instructions.

Plaintiff, an Illinois corporation, operates a chain of retail stores in a number of states, including Colorado. In order to promote the sale of merchandise in its stores, plaintiff, in Denver, contracts with the Denver Post and the Rocky Mountain News for advertising purposes. Plaintiff has engaged in this practice for more than twenty years.

One type of advertising selected by plaintiff, and the only type concerned in this tax assessment is the newspaper insert or supplement. Plaintiff's advertising supplements are produced by commercial printers who operate outside the Denver area and who have no connection with either of the Denver newspapers.

Once printed, the supplements are transported as arranged by plaintiff to the newspaper companies' facilities in Denver. There, the supplements are secured and stored until the date contracted between plaintiff and the respective newspaper company for insertion into that day's paper. Until actually inserted, plaintiff retains the power to cancel delivery of the supplements.

Following insertion, the newspapers, now with the advertising supplements, are distributed via the newspaper companies' regular delivery systems. At the same time, approximately 200 copies of the advertising supplement are distributed by the newspaper companies to each of plaintiff's stores. These copies are posted in plaintiff's stores or distributed without cost to in-store customers.

Eiberger, Stacy, Smith and Martin, Rodney L. Smith, Roy A. Adkins, Brenda M. Sauro, Denver, for plaintiff-appellant.

Daniel E. Muse, City Atty., Robert F. Strenski, Asst. City Atty., Denver, for defendants-appellees.

As instructed by plaintiff, the newspapers dispose of any unused supplements, although plaintiff could retrieve them if it wished to do so.

Opinion by Judge NEY.

Plaintiff, Walgreen Co., appeals the judgment of the district court which upheld an assessment of taxes against it by defendants, Alan N. Charnes and the City and

In December 1988, plaintiff was assessed taxes by defendants based upon plaintiff's use of advertising supplements between June 1985 and July 1988. Following an evidentiary hearing held in response to plaintiff's petition for cancellation, the as-

sessment was upheld by the Manager of Revenue.

Upon plaintiff's appeal of the Manager of Revenue's order, a trial *de novo* was granted to plaintiff, pursuant to § 29–2–106.1, C.R.S. (1986 Repl.Vol. 12A). *See Walgreen Co. v. Charnes*, 819 P.2d 1039 (Colo.1991). Although the trial *de novo* excepted the six months of the tax period which antedated § 29–2–106.1, the district court upheld the assessment for the entire period, ruling on the first six-month period under C.R.C.P. 106(a)(4). This appeal followed.

## I.

Denver Revised Municipal Code (Code) § 53.96 imposes a use tax on:

> Every person exercising the taxable privilege of storing, using, distributing or consuming in the city ... any article of tangible personal property, purchased at retail....

Plaintiff contends that the trial court erred in concluding that plaintiff's purchase of advertising supplements constitutes a taxable privilege as contemplated by the Code. We do not agree.

## A.

Plaintiff first argues that, because its purchases of advertising supplements are wholesale transactions, those purchases are not subject to the imposition of use taxes. Defendants classify these purchases as retail and therefore taxable. We agree with defendants.

A sale at retail is broadly defined by the Code as "any sale ... except a wholesale sale." Denver Revised Municipal Code § 53–95(13) (now § 53–95(18)). A wholesale sale is defined, in pertinent part, as:

> "A sale by wholesalers ... for resale, and does not include (i) a sale by wholesalers to users or consumers not for resale...." Denver Revised Municipal Code § 53–95(22)(a) (now § 53–95(30)(a)).

Plaintiff asserts that the advertising supplements which it purchases from its print-ers are resold, either to the newspapers or to the readers of the newspapers.

Although plaintiff concedes that the newspaper companies do not pay, in the conventional sense, for the supplements, it argues that a "sale" (and thus resale) within the meaning of the Code nevertheless takes place. It bases this argument upon the definition of a sale contained in the Code:

> Sale or purchase or sale and purchase includes ... sales and the exchange of property ... as well as the purchase and sale thereof for money; and every transaction, conditional or otherwise, based upon consideration constitutes a sale. Denver Revised Municipal Code § 53–95(15) (now § 53–95(20)).

Plaintiff additionally relies upon *State of Colorado Department of Revenue v. Adolph Coors Co.*, 724 P.2d 1341 (Colo. 1986). In *Coors*, our supreme court interpreted an identical definition of "sale" under the state sales and use tax code. In so doing, it relied upon the Colorado Uniform Commercial Code, (UCC) which defines "sale" as consisting "in the passing of title from the seller to the buyer for a price...." Section 4–2–106(1), C.R.S. (1992 Repl.Vol. 2).

"Price" is not defined in the UCC, but "value" includes "any consideration sufficient to support a simple contract." Section 4–1–201(44)(d), C.R.S. (1992 Repl.Vol. 2). And, "passing of title" to the buyer occurs "at the time and place at which the seller completes his performance with reference to physical delivery of the goods." Section 4–2–401(2), C.R.S. (1992 Repl.Vol. 2).

■ Thus, plaintiff contends that a sale takes place upon its completed delivery of the supplements to the newspaper facilities. This passage of title to the newspaper companies, according to plaintiff, is supported by consideration in the form of the newspaper companies' agreements to insert the supplements and by their granting of discounts to plaintiff for the purchase of other advertising. We reject this analysis.

Plaintiff misconstrues the relationship between it and the newspapers. Rather than being a seller, we perceive plaintiff as a purchaser of services from the newspaper companies. These companies, for consideration consisting of money paid according to contract terms by plaintiff, perform the service of inserting and delivering the advertising supplements. The supplements themselves are merely the means by which the companies perform the service purchased by plaintiff. Likewise, the newspaper companies receive future advertising at stated rates for this insertion and delivery. Further, the record does not support an interpretation that plaintiff and the newspaper companies have ever considered this a sale of supplements to the companies.

█ Neither is plaintiff correct in its alternate contention that insertion of its advertising supplements into the newspapers culminates in a resale by plaintiff to the purchasers of the newspapers. A purchase of an item of tangible personal property is one for resale and therefore not a purchase at retail if the primary purpose of the transaction is the acquisition of the item for resale in an unaltered condition and basically unused by the purchaser. *A.B. Hirschfeld Press, Inc. v. City & County of Denver*, 806 P.2d 917 (Colo.1991).

Plaintiff maintains that its transaction is within the *Hirschfeld* parameters, stating that its primary purpose in purchasing the supplements is to transfer them to the newspapers for resale to customers as a component of the newspaper and that the supplements were unaltered and unused by plaintiff.

While we agree that plaintiff intended that the buyers of the newspapers, and thus plaintiff's potential customers, should be the ultimate recipients of the supplements, we are unable to conclude that plaintiff purchases its advertising to sell the supplements themselves to the public. In fact, plaintiff gives these same advertising supplements to the public free of charge at its retail stores.

Plaintiff concedes that it utilizes the advertising media to boost sales of merchandise in its stores. It is from the sale of this merchandise that plaintiff derives its income. Plaintiff derives no revenue in exchange for the supplements themselves.

Finally, evidence does support plaintiff's contention that the supplements reach the newspaper readers in a unaltered and unused condition. However, because it is recognized that the purpose of advertising in general is to inform the public and, usually, to increase sales, plaintiff itself has made use of the supplements by putting them into the hands of potential consumers.

It is plaintiff's use of the items, not an ultimate transfer of title to the newspaper's customers, that is pertinent to the determination of the primary purpose for which items were acquired. *See A.B. Hirschfeld Press, Inc. v. City & County of Denver, supra.*

### B.

█ Plaintiff next contends that its advertising supplements were purchased to become an integral component part of the newspapers and that the purchases were thus wholesale transactions not subject to use tax. Again, we do not agree.

Denver Revised Municipal Code § 53–95(22)(b) (now 53–95(30)(b)) designates as a wholesale sale, one in which "a person engaged in the business of manufacturing or compounding for use, profit, or sale" purchases tangible personal property if it meets *all* the following conditions:

(i) it is actually and factually transformed by the process of manufacture;

(ii) it becomes by the manufacturing or compounding process a necessary and recognizable ingredient, component and constituent part of the finished product; and

(iii) its physical presence in the finished product is essential to the use thereof in the hands of the ultimate consumer.

Plaintiff asserts that, as a manufacturer of products which it sells in its retail stores, it is within the purview of the statute when it makes purchases of advertising inserts from its printers. However, while we agree that plaintiff is a manufacturer,

we do not believe its role as a manufacturer of drugs, health and beauty aids, containers, and sundry items has the contemplated nexus to the product at issue. Therefore, we decline to adopt this broad interpretation of the ordinance.

■ Our primary task in construing a statute (or ordinance) is to determine and give effect to the intent of the body enacting it. *See Jones v. Cox,* 828 P.2d 218 (Colo.1992).

Here, the stated intent of the City is that "every person who stores, uses, distributes or consumes ... tangible personal property, purchased at retail" be subject to the use tax. Denver Revised Municipal Code § 53–92(a).

Manufacturing is "the performance as a business of an integrated series of operations which places personal property in a form ... different from that in which it was acquired ... [and] must result in a different product having a distinctive name, character, and use." Denver Revised Municipal Code § 53–95(9) (now § 53–95(11)).

We conclude that the City, by broadly defining transactions subject to use tax while narrowly defining terms under which one might avoid the tax, displays an intent to include all but transactions which are clearly outside its scope.

Here, when viewed as a whole, we believe that the segment of the ordinance upon which plaintiff relies refers to the manufacturer who produces the ultimate product, in this case either the printing company which produces the supplement or the newspaper companies which produce the finished newspapers.

Additionally, we concur in the trial court's conclusions that the advertising supplement is neither a necessary component of the newspaper nor essential to its use in the hands of the ultimate consumer. While we do not quarrel with the proposition that the advertising in the supplements provides convenient and useful information, we do not consider them as requisite or indispensable parts of the newspaper which readily performs its function with or without the supplements.

Plaintiff's reliance on *Western Electric Co. v. Weed,* 185 Colo. 340, 524 P.2d 1369 (Colo.1974) is misplaced. Plaintiff seems to say that because its advertising supplements can be "factually recognized without difficulty," they are component parts and thus essential. However, *Western Electric, supra,* held that articles whose identity could be factually established without difficulty did *not* become a component part of the product.

### C.

■ Plaintiff also contends that its advertising supplements are not taxable under the Denver Manager of Revenue Rules.

Denver Manager of Revenue Rules Regarding the Assessment and Collection of Sales and Use Taxes 4 reads, in pertinent part:

> The distribution of newspapers ... advertising pamphlets, ... leaflets, and similar items which are distributed free of charge ... by being included in and distributed as part of a newspaper are exempt from the Sales and Use Taxes. However, a tax must be paid by the advertiser or distributor, or whoever pays for the preparation and printing of the publication, because the advertiser, distributor, etc., is presumed to be the user and consumer of the publication after the retail sale thereof....

Plaintiff argues that insofar as the rule places liability on the person responsible for paying for preparation and printing of the supplement, the liability is dependent upon the supplement being distributed free of charge. Because plaintiff maintains that its advertising supplement is purchased by the newspapers' readers, it is not free and therefore not subject to the use tax. We are not persuaded. Rather, we rely upon the plain language of the rule that when read in conjunction with Denver Manager of Revenue Rule 1 which provides for taxation of newspaper purchases, clearly creates a separate taxable liability for an advertiser such as plaintiff.

## D.

■ Plaintiff asserts that it had no taxable use of the advertising supplements and is therefore not subject to imposition of the use tax. We again disagree.

It is the declared intent of the City to impose a use tax on every person who "stores, uses, distributes or consumes in the city any article of tangible personal property...." Denver Revised Municipal Code § 53-92(a).

"Storage" as defined by the Code, "means any keeping or retention of, or exercise of dominion or control over, or possession for any length of time of tangible personal property...." Denver Revised Municipal Code § 53-95(17) (now § 53-95(22)).

Plaintiff first maintains that it does not store the supplements but rather that they are stored by the newspaper companies. While we agree that the supplements are delivered upon the instructions of the newspaper companies to the newspaper facilities a number of days prior to their insertion, we nevertheless agree with the trial court's conclusion that plaintiff physically stores the advertising supplements on the newspapers' premises. Plaintiff can cancel or alter its instructions regarding delivery of the supplements at any time prior to their insertion, and thus, it retains control over them.

"Use" is defined as "the exercise, for any length of time, by any person within the city of any right, power or dominion over tangible personal property." Denver Revised Municipal Code § 53-95(21) (now § 53-95(29)).

■ Plaintiff argues that it did not exercise dominion over the supplements after their shipment from the printers, that its personnel had never been on the premises of the newspapers for this purpose, and that any exercise of dominion by it took place at its Illinois corporate headquarters and not by "any person within the City." We decline to accept this contention.

■ Statutes (or ordinances) must be construed as a whole and in such a way as not to defeat obvious legislative intent. Moreover, the best guide is the declaration of policy which forms the initial part of an enactment. *Walgreen·Co. v. Charnes*, 819 P.2d 1039 (Colo.1991).

Here, the Code reflects a broad legislative intent to impose sales or use taxes upon the great majority of purchasers of tangible personal property. *See A.B. Hirschfeld Press, Inc. v. City & County of Denver, supra.* Therefore, we conclude that the City did not wish to exempt every use occurring within the City which has been directed from without, such as here by a foreign corporation.

Plaintiff argues that even if it had some use of the advertising supplements in Denver, it is established under *Hirschfeld* that taxation cannot be imposed for minor use if the primary purpose of the purchase is resale or inclusion as a component part of a finished product. Because we have concluded that the supplements were neither a purchase for resale nor included as a component part of a finished product, this argument is not applicable.

## E.

■ Plaintiff alternately contends that it had no taxable use of the advertising supplements outside the City and, thus, that portion of the supplements delivered to non-Denver newspaper subscribers is not subject to imposition of the use tax.

Because we agree with the trial court's conclusion that plaintiff's use, as defined by the Code, took place at the newspapers' facilities prior to delivery, we disagree with this contention.

## II.

Plaintiff contends that the trial court erred in its determination that it had not been denied rights guaranteed under the United States and Colorado Constitutions. We agree in part.

## A.

■ Plaintiff first asserts that application of the use tax to its purchase of adver-

tising supplements violates the guarantees of freedom of speech and of the press protected by both the First Amendment and Colo. Const. art. II, § 10. We are not persuaded.

■ To establish standing to challenge a governmental action, the person challenging the statute must show that he or she had suffered actual injury from the challenged statute or ordinance and that the injury incurred is to a legally protected or cognizable interest. *State Board for Community Colleges & Occupational Education v. Olson,* 687 P.2d 429 (Colo.1984).

■ The payment of taxes by plaintiff constitutes an actual injury sufficient to meet the first prong of this test. *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). However, plaintiff is unable to show that the injury which occurred is to a legally protected interest.

■ Advertising, as commercial speech, is protected by the First Amendment, but it is not immune to taxation. Advertising may instead be subject to general taxes or economic regulations without necessarily violating the Constitution. *See Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue,* 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983).

■ The party assailing the constitutionality of an act has the duty of affirmatively proving the unconstitutionality beyond a reasonable doubt. *Walker v. Bedford,* 93 Colo. 400, 26 P.2d 1051 (1933).

Here, there is no attempt to regulate the content of plaintiff's commercial speech. Rather, the content is irrelevant to the assessment of the tax, which a general tax imposed upon plaintiff's purchase and use of non-exempt tangible personal property.

Plaintiff also argues that, as publisher of its advertising supplements, it is a member of the press and, as such, has suffered violation of its rights as guaranteed by the First Amendment. This argument is without merit.

B.

Plaintiff next asserts that, because advertising supplements are subject to imposition of the use tax while other forms of advertising are not, it has been denied its right to equal protection as guaranteed by the Fourteenth Amendment and Colo. Const. art. II, § 25. We conclude that a remand is necessary before this contention can properly be resolved.

■ Because fundamental First Amendment rights of plaintiff are not implicated by the city's ordinance, the test to determine constitutionality is rationality. *Dunagin v. City of Oxford,* 718 F.2d 738 (5th Cir.1983) Under this standard of review, the ordinance is constitutional if the classifications that it creates bear a rational relation to a legitimate governmental purpose. *Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1982).

The uncontroverted evidence indicates that there are three types of advertising material: run of the press, classified, and supplements. Of the three, only advertising supplements have been made subject to imposition of the use tax by defendants.

■ Plaintiff argues that this disparate treatment for different forms of advertising has no rational basis and, further, that the distinction between the different forms of advertising is arbitrary.

Plaintiff cites advertising printed on yellow stock (paper) by a Denver newspaper company and categorized as run of the press when distributed with that company's newspaper. Identical advertising ordered from another commercial printer and sent to the Denver newspaper for subsequent delivery is classified as a supplement.

Plaintiff cites a second instance in which a "blockbuster," several pages of advertising devoted to a single establishment, was printed by one Denver newspaper and used by it as run of the press advertising while other copies of the same section were sent to a second Denver newspaper for delivery as supplements.

In addition, the newspaper companies, in their function as commercial printers, create sections such as the HUD Home Source, which plaintiff asserts are purchased and used in the same manner as its inserts, yet have not been made subject to the use tax.

Finally, the newspaper companies themselves purchase from other commercial printers specific supplemental sections, such as the comics, which contain a separate advertising sheet and which are not subject to the use tax.

Because the trial court did not address plaintiff's claim that its right to equal protection has been denied, the record before us is devoid of the findings delineating the material in its appropriate categories. Therefore, the matter must be remanded to the trial court to address the issue of equal protection and to make findings on the record which will set forth the standard by which advertising is classified for purposes of taxation.

### III.

Plaintiff finally asserts that the trial court erred in its conclusion that the notice of assessment was sufficient. We do not agree.

Plaintiff argues that defendants, by obliterating certain language which had previously appeared on the form of notice of assessment, sought to block any exercise of additional administrative review as permitted by § 29–2–106.1(2)(a), C.R.S. (1986 Repl.Vol. 12A). However, because plaintiff received a *de novo* review of the Manager of Revenue's final determination, we are unable to conclude that plaintiff has been prejudiced by the notice as received.

The judgment is affirmed in its entirety with the exception of plaintiff's claims with regard to a denial of equal protection, and the cause is remanded for findings on that issue.

STERNBERG, C.J., and DAVIDSON, J., concur.