377 A.2d 345.

BRIER MANUFACTURING CO. *vs.* JOHN H. NORBERG,
*Tax Administrator.*

AUGUST 30, 1977

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C.J. These petitions for certiorari to review a Superior Court judgment upholding in part and reversing in part a decision of the tax administrator determining that molds used by the Brier Manufacturing Company (the taxpayer) in its manufacturing process are subject to taxation under G.L. 1956 (1970 Reenactment) §44-18-30(H) and that the taxpayer is liable for a penalty assessed thereunder.

The parties submitted this case on an agreed statement of facts which may be summarized briefly. The taxpayer is engaged in the manufacturing of jewelry and small decorated plastic packages which are made principally from various kinds of base metals and plastics. The signigicant operation concerning this suit involves the molds used in the production of the plastic packages. The molds are custom made and are used directly in the manufacturing process to form the package after a thermoplastic material is injected into the cavities of the mold. In the interest of efficiency, the injection process must be run on a continuous 24-hour per day basis. Under such conditions the cavities of the mold eventually would be worn to the point where they would be unable to produce items of the required specificity and would no longer be suitable for manufacturing purposes. The amount of use required to render a mold unfit for further manufacturing is unpredictable and depends upon a number of factors including demand for the product and the nature and amount of maintenance work done on the mold. Nonetheless, it was agreed that if the molds had been operated continuously for 7 days a week they would have been rendered physically unfit for use in the manufacturing

process within a period of time of 1 year. None of the molds which are the subject matter of this suit have been used to such a degree. However, because a mold can be used only for manufacturing the item for which it was specifically designed, it no longer has any economic value once that item has been produced in the required quantity. With the exception of two large molds, the so-called "Ivanhoe" molds, the principal molds involved in this case were used up, in the economic sense, within 1 year after first being used in the manufacturing process.

Section 44-18-30(H) exempts from liability tangible personal property which is consumed directly in the process of manufacturing, provided, however, that such consumption occurs within 1 year from the date the property is first so used.[1] The tax administrator determined that the taxpayer's molds did not fall within this exemption since they were never physically unfit for use in the manufacturing process and, accordingly, he upheld the tax use levied on the molds which with interest and a 10 percent penalty amount to $19,509.96. The taxpayer payed that amount and sought review in Superior Court wherein the trial justice reversed the decision of the tax administrator. The trial justice based his decision upon the tax administrator's regulation interpreting the scope of §44-18-30(H) and ruled that since the taxpayer's molds were economically, although not physical-

---

[1]General Laws 1956 (1970 Reenactment) §44-18-30(H) reads in pertinent part as follows:

"From the sale and from the storage, use, or other consumption in this state of tangible personal property, electricity, natural gas, artificial gas, steam, refrigeration, and water, when such property or service is purchased for the purpose of being manufactured into a finished product for resale, and becomes an ingredient, component, or integral part of such manufactured, compounded, processed, assembled, or prepared product; or if such property or service is consumed directly in the process of manufacturing for resale tangible personal property, electricity, natural gas, artificial gas, steam, refrigeration, or water, provided, however, that such consumption occurs within one (1) year from the date such property or service is first used or applied in such process of manufacturing."

ly, used up within a year, they were exempt from tax liability. Additionally, the trial justice concluded that the regulation was reasonable in light of the language used in §44-18-30(H) and the intent of the Legislature in enacting that statute. A judgment was entered in accordance with the trial justice's decision. Thereafter, the tax administrator filed a motion to amend the judgment with respect to the amount of the refund. The disputed portion of the judgment related to the levy upon the so-called "Ivanhoe" molds and the penalty assessment. The trial justice granted the motion. He concluded that since the parties agreed that the "Ivanhoe" molds were not economically consumed within 1 year, they were not entitled to exemption and, relying upon the reasoning expressed in *Western Elec. Co.* v. *Weed,* 185 Colo. 340, 524 P.2d 1369 (1974), he found that the tax administrator's penalty assessment was proper. Judgment was entered in favor of the taxpayer in the amended amount of $12,943.94. The taxpayer then filed a timely petition for a writ of certiorari to review the judgment while the tax administrator sought a similar writ to review that portion of the judgment exempting the principal molds from use tax liability. Thereafter we granted the petitions and the cases were consolidated for hearing before this court.

As we perceive it the dispositive issue in this case is whether the molds which within 1 year after initially being used in the manufacturing process no longer had any economic value, although still physically fit for futher manufacturing use if the demand existed, can be said to have been directly consumed within the literal meaning of the operative words contained in §44-18-30(H). For the reasons which follow we hold that they cannot.

In determining whether an item is "consumed directly" in the manufacturing process so as to be exempt from liability under the Sales and Use Tax Act we are bound by the definition of that term provided in §44-18-30(H). *Broadway Auto Sales, Inc.* v. *Asselin,* 93 R.I. 403, 406, 176 A.2d 714, 716

(1961). And in construing that section, the words used are to be given their plain meaning unless a contrary intention clearly appears; except where the language admits of ambiguity, the words of a statute cannot be interpreted or extended but must be applied literally, *In re Shepard Co.*, 115 R.I. 290, 342 A.2d 918 (1975); *Andreozzi v. D'Antuono*, 113 R.I. 155, 319 A.2d 16 (1974); *Podborski v. William H. Haskell Mfg. Co.*, 109 R.I. 1, 279 A.2d 914 (1971). The pertinent portion of §44-18-30(H) reads as follows:

> " 'Consumed directly' means destroyed, used up or worn out to the degree or extent that such property cannot be repaired, reconditioned, or rendered fit for further manufacturing use.
>
> " 'Consumed directly' shall not mean or include mere obsolescence."

The definitional language used contains no ambiguity or inconsistency and clearly refers to the type of consumption directly resulting from an item's physical and not economic unfitness for use in the manufacturing process. This conclusion is supported by the Legislature's reference to the fact that consumption does not include mere obsolescence. Obsolescence, as it is used in revenue acts, is generally understood to mean the "process * * * whereby property, because of causes other than physical deterioration, loses its economic usefulness to the taxpayer." 4 Mertens, *The Law of Federal Income Taxation* §23.104 & n.24 (rev. ed. 1973). Obsolescence may be attributable to a variety of conditions having no physical relation to the property including loss of trade. *Real Estate Land-Title & Trust Co. v. United States*, 309 U.S. 13, 16, 60 S. Ct. 371, 372, 84 L. Ed. 542, 546 (1940); *Becker v. Anheuser-Busch Inc.*, 120 F.2d 4032, 415 (8th Cir. 1941); *See Colorado & Utah Coal Co. v. Rorex*, 149 Colo. 502, 510, 396 P.2d 796, 801 (1962); *Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 356-57, 492 P.2d 147, 163 (1971). Accordingly, since neither the principal molds nor the "Ivanhoe" molds were physically used up

within the requisite period of time they are not entitled to exemption under 44-18-30(H). Nonetheless, the taxpayer points to the stipulated fact that the molds would have been physically worn out after a year's continuous use. The controlling time period, however, is based upon a calendar year. *Miniature Casting Corp.* v. *Norberg,* 116 R.I. 636, 360 A.2d 105 (1976).

Having concluded that the statutory definition of the term "consumed directly" by its very language limits the exemption found in §44-18-30(H) to tangible personal property physically unfit for use in the manufacturing process, it follows that the tax administrator's regulations which purports to interpret this section cannot be given any weight.[2] We recognize, of course, that regulations duly promulgated by the tax administrator are prima facie evidence of the proper interpretation of the provisions of the Sales and Use Tax Act. Section 44-19-33. However, where a regulation is plainly inconsistent with the operative language of the statute it must be declared invlaid. *Farrell Lines, Inc.* v. *United States,* 499 F.2d 587 (Ct. Cl. 1974); *Kettell* v. *Johnson & Johnson,* 337 F. Supp. 892 (E.D. Arl. 1972); *Cooper* v. *Swoap,* 11 Cal.3d 85f6, 524 P.2d 97, 115 Cal. Rptr. 1 ;(1974); *Commonwealth* v. *Miller,* 361 Mass. 644, 282 N.E.2d 394 (1972).

In anticipation of this conclusion the taxpayer next contends that the statute so interpreted violates the due process and equal protection clauses of the Constitution of the United States. The taxpayer's equal protection argument is without merit. *Miniature Casting Corp.* v. *Norberg, supra* at 640, 360 A.2d at 107. Nor can we agree that the statute in question is repugnant to the due process clause. The tax-

---

[2]The tax administrator's regulation issued June 19, 1974, provides that:

"Machinery, tools, or equipment used in production as defined above, [referring to §44-18-30(H)] which have a normal useful life in the particular plant of the taxpayer of less than one year will be considered 'consumed directly' within the meaning of the law."

payer contends that because of market conditions it cannot be predicted with any degree of certainty at the time the mold is first used in the manufacturing process whether it will be worn out within 1 year and thus exempt from taxtion. For this reason he concludes the taxing statute is void for lack of certainty. The uncertainty with respect to the tax liability of taxpayers's property, however, arises not from the language of the statute in question but from the taxpayer's inability to determine prior to the acquisiton of the molds what the demand for the product will be. Difficult business judgments do not render a statute unconstitutional. We percieve no lack of certainty and definiteness in the pertinent statute which would permit us to strike it down as violative of due procsss. See *Moore* v. *Langton,* 92 R.I. 141, 159, 167 A.2d 558, 567 (1961).

The taxpayer fnally contends that the trial justice erred in ruling that the tax administrator's penalty assessment was proper. He directs our attention to the applicable penalty statute, G.L. 1956 (1970 Reenactment) §44-19-12,[3] and submits that since the alleged deficiency was due to an "honest belief," based upon the advice of counsel, that the property involved was not subject to tax liability, there has been no intentional disregard of the provisions of the penalty statute and the assessment was, therefore, improper. We disagree.

The statute identifies no exception to its provisions in circumstances where the taxpayer has a good-faith, albeit erroneous belief that certain property is not subject to tax

---

[3]General Laws 1956 (1970 Reenactment) §44-19-12 reads as follows:

"If any part of the deficiency for which a deficiency determination is made is due to negligence or intentional disregard of the provisions of this chapter and chapter 18 of this title, a penalty of ten percent (10%) of the amount of the determination shall be added thereto. If any part of the deficiency for which a deficiency determination is made is due to fraud or an intent to evade the provisions of this chapter or chapter 18 or this title, a penalty of fifty percent (50%) of the amount of the determination shall be added thereto."

liability. The operative language of §44-19-12 is clear and unambiguous and imposes a penalty upon an intentional but nonfraudulent avoidance of the tax. *Western Elec.* v. *Weed, supra.* The taxpayer's remedy in the event that he disputes a portion of his liability is to pay the tax and then seek a refund pursuant to the appropriate statute.

The taxpayer's petition for certiorari is denied and dismissed, the writ heretofore issued is quashed; the tax administrator's petition for certiorari is granted. The judgment entered by the Superior Court is affirmed in part and reversed in part, and the papers certified to this court are ordered returned to the Superior Court with our decision endorsed thereon.

*Isadore Paisner,* for plaintiff.

*Julius C. Michaelson,* Attorney General, *Allen P. Rubine,* Assistant Attorney General, *Gregory L. Benik,* Special Assistant Attorney General, *Perry Shatkin,* Chief Legal Officer (Taxation), for defendant.