392 A.2d 371.

STATEWIDE MULTIPLE LISTING SERVICE, INC. *v.*
JOHN H. NORBERG, *Tax Administrator.*

OCTOBER 20, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J. The tax adminitrator filed this petition for certiorari pursuant to G.L. 1956 (1977 Reenactment) §42-35-16 seeking review of a Superior Court judgment which held that booklets purchased by Statewide Multiple Listing Service, Inc. (MLS) were publications within the meaning of G.L. 1956 (1970 Reenactment) §44-18-30 (B) and therefore exempt from imposition of a use tax.

MLS is a statewide, nonbusiness corporation whose membership is limited to real estate brokers affiliated with the Rhode island Realtors Association. The corporaction exists to facilitate an exchange of information among member concerning real estate available for sale. Each member has the opportunity to participate in the sale of a property listed with MLS by another member.

In order to circulate and update property listings, MLS contracted with International Graphics Corporation of Minnesota (Graphics) to produce a weekly booklet. The booklet includes a description of new properties, properties which have been sold or removed from the listings, city and

town tax rates, a membership roll, notices of meetings and other data of interest to members. All of the material included in the booklet is provided by MLS to Graphics. In some cases, the raw data is rearranged and reindexed by Graphics' computer.

Graphics charges MLS $2.55 for each weekly booklet printed. This charge is passed through by MLS to each member who receives the booklet.

Graphics also prepares in each quarter a cumulative booklet which lists properties sold during that quarter and during prior quarterly periods in that calendar year. The quarterly booklet contains statistical indices indicating the method and amount of mortgage financing, time on market, and selling price of each property listed. Again the raw data is submitted by MLS members, rearranged and indexed by Graphics using its computer. Both the weekly and the quarterly booklets are confidential and are available only to MLS members. Violations of confidentiality are reported to MLS, a hearing is held and sanctions may be imposed.

Evidence indicated that MLS paid Graphics approximately $108,000 during the period in question, January 1972 through September 1973. Based on this figure and his determination that the booklets were catalogues and therefore excluded by regulation from the periodical exemption set out in §44-18-30(B), a revenue agent assessed a use tax of $5,407.67 upon receipt of the booklets by MLS. An administrative hearing followed at which the assessment was upheld.

MLS paid the assessment and sought review in the Superior Court pursuant to §42-35-15. The trial justice reversed the decision of the tax administrator holding that the booklets were periodicals within the meaning of §44-18-30(B) and, alternatively, that the transaction between Graphics and MLS was not a transfer of tangible personal property but a purchase of services and therefore outside the scope of the taxing statute. The tax administrator brought the instant petition.

A writ of certiorari brings up the record of the lower court for inspection and review on questions of law only. *Providence Journal Co.* v. *Mason,* 116 R.I. 614, 620, 359 A.2d 682, 685 (1976). Review is limited to the allegations of error which appear in the petition for the writ. *Id.* The tax administrator alleges in his petition that the trial justice misinterpreted the law in holding that the booklets were exempt periodicals and also erred in finding that the booklets represented a service rather than items of personal property.

Chapter 18 of title 44 entitled "Sales and Use Taxes-Liability" provides in section 20 that "[a]n excise tax is hereby imposed on the storage, use, or other consumption in this state of tangible personal property * * * ."

Section 44-18-30(B), however, exempts from taxation gross receipts "[f]rom the sale and from the storage, use, or other consumption in this state of any publication regularly issued at average intervals not exceeding three (3) months."

It is undisputed that the booklet at issue is regularly issued at intervals not exceeding 3 months. Therefore, the resolution of this controversy lies in the meaning we ascribe to the term "publication." The statute provides no definition. However, the tax administrator pursuant to §44-19-33 has issued rules and regulations interpreting that term. In a bulletin issued July 1, 1966, he defined exempt "periodicals" or "publications" as "those periodicals or publications * * * each issue of which contains news or information of general interest to the public, or to some particular organization or group of persons," but excluded circulars, papers containing more advertising than news, catalogues, and shopping guides. Later bulletins excluded financial and personal service publications and directories from the exemption.

The construction of statutes is a matter reserved to the courts. *Pacheco* v. *Lachapelle,* 91 R.I. 359, 361-62, 163 A.2d 38, 40 (1960). However, an interpretive regulation issued by an agency charged with administration of a statute will ordi-

narily be given great weight. *Flather* v. *Norberg*, 119 R.I. 276, 283 n.3, 377 A.2d 225, 229 n.3 (1977). This practice is limited by a requirement that the statute be ambiguous and therefore in need of interpretation. *Brier Manufacturing Co.* v. *Norberg*, 119 R.I. 317, 322, 377 A.2d 345, 348 (1977). Additionally, the interpretation by the agency may not encroach upon the legislative province by altering or amending the scope of the statute. *Petrarca* v. *Tax Administrator*, 113 R.I. 449, 457, 322 A.2d 621, 625 (1974).

We find that the term "publication" employed in §44-18-30(B) is clear and unambiguous. It implies a communication to the general public. *Marx* v. *United States*, 96 F.2d 204, 206 (9th Cir. 1938), *quoting Associated Press* v. *International News Service*, 245 F. 244, 250-51 (2d Cir. 1917); *Tiffany Productions* v. *Dewing*, 50 F.2d 911, 914 (D.Md. 1931); *Estill County* v. *Noland*, 295 Ky. 753, 763, 175 S.W.2d 341, 346 (1943); *Hancock-Nelson Mercantile Co.* v. *Commissioner of Taxation*, 298 Minn. 342, 345, 215 N.W.2d 620, 622 (1974); *Business Statistics Organization, Inc.* v. *Joseph*, 299 N.Y. 443, 451, 87 N.E.2d 505, 508 (1949); Black's Law Dictionary 1396 (rev. 4th ed. 1968); Webster's Third New International Dictionary 1836 (1968). Where the language of a statute expresses a clear and sensible meaning, that meaning will be conclusively presumed to be the one intended by the Legislature. *Markham* v. *Allstate Insurance Co.*, 116 R.I. 152, 155-56, 352 A.2d 651, 653 (1976). No interpretation is required or permitted. *Pacheco* v. *Lachapelle*, 91 R.I. 359, 361-62, 163 A.2d 38, 40 (1960). In the case at bar, the plain meaning of the language used by the Legislature requires that, to qualify for the exemption, a periodical must be available to the general public. The booklet at issue is available only to MLS members who are bound by their agreement to keep the booklet confidential.

Additionally, by promulgating a series of regulations applicable to the periodical exemption, the tax administrator has broken down the broad term "publication" used in

§44-18-30(B) into several sub-classes, some of which are exempt from the sales and use tax and some of which are not. In effect, he has altered and amended the scope of the statute enacted by the Legislature in the guise of interpretation. It is well settled that an administrative effort to vary the terms of a statute will be invalid. *Brier Manufacturing Co.* v. *Norberg,* 119 R.I. 317, 323, 377 A.2d 345, 349 (1977).

For the foregoing reasons, we conclude that the regulations purporting to interpret the term "publication" as used in §44-18-30(B) are void and the plain meaning of the statute controls. Therefore the booklet at issue in this case is not within the exemption set out in §44-18-30(B).

MLS alternatively contends that the tax imposed by §44-18-20 applies only to the transfer of tangible property and claims that the payment made to Graphics represented reimbursement for service performed rather than for the booklets themselves.

This is a case of first impression in Rhode Island. We are aware that nearly all transactions of this nature are of necessity a mixture of sales and service. In some cases the service is the main item purchased and the property received is incidental to that service. In some transactions, the service and property aspects of the purchase are readily separable. In other transactions, the main item of the purchase is the property and the service is incidental to receipt of that property.

Other jurisdictions have addressed the taxability of these mixed transactions. The majority of those courts considering whether the transfer of information generated by a computer is a taxable transfer have held that where the real object of the transaction is the product of the service, it is a taxable transfer. Where the real object of the transaction is the service rendered and the transfer of personal property is merely incidental to the service the transaction is not taxable. *See Community Telecasting Service* v. *Johnson,* 220 A.2d 500

(Me. 1966); *Dun & Bradstreet, Inc.* v. *City of New York,* 276 N.Y. 198, 11 N.E.2d 728 (1937); *Accountants Computer Services, Inc.,* v. *Kosydar,* 35 Ohio St. 2d 120, 298 N.E.2d 519 (1973); *Williams & Lee Scouting Service, Inc.* v. *Calvert,* 452 S.W.2d 789 (Tex. Civ. App. 1970).

MLS relies upon *Community Telecasting Service* v. *Johnson,* 220 A.2d 500 (Me. 1966), and *Williams & Lee Scouting Service, Inc.* v. *Calvert,* 452 S.W.2d 789 (Tex. Civ. App. 1970), to support its contention that the true object of the transaction was the service provided by Graphics rather than the booklets themselves. This reliance is misplaced. In those cases, the producer independently researched and analyzed data generated by its own personnel, finally submitting the results to the taxpayer in booklet form. This is not the situation in the matter before us. There is no evidence that Graphics applied indepenent thought to the data it processed or that Graphics itself generated any raw data. Rather, it rearranged and in some cases merely reprinted data submitted by MLS. The true object of the transaction between Graphics and MLS was clearly not information gathering. The information was already in the hands of MLS. The true object was the translation of data into a form which was readily available to MLS members. While some element of service was of necessity present in that the services of persons knowledgeable in computer operations were required to process the information submitted by MLS, the service aspect of the transaction was clearly incidental to production of the booklet.

Therefore, we hold that the transaction between Graphics and MLS constituted a transfer of tangible personal property properly the subject of taxation.

The petition for certiorari is granted, the judgment entered in the Superior Court is quashed, and the papers in the case are ordered returned to the Superior Court with our decision endorsed thereon.

*DeSimone, Del Sesto & Del Sesto, Ronald W. Del Sesto, Gregory T. Del Sesto,* for plaintiff-respondent.

*Julius C. Michaelson,* Attorney General, *Allen P. Rubine,* Assistant Attorney General, *Perry Shatkin,* Chief Legal Officer (Taxation), for defendant-petitioner.