**HASBRO INDUSTRIES, INC.**

v.

**John H. NORBERG, Tax Administrator.**

Nos. 82–357–M.P., 82–375–M.P.
and 82–408–M.P.

Supreme Court of Rhode Island.

Jan. 22, 1985.

 

Matthew F. Medeiros, Providence, for petitioner.

Dennis J. Roberts II, Atty. Gen., Donald G. Elbert, Jr., Asst. Atty. Gen., Perry Shatkin, Chief Legal Officer, Div. of Taxation, for respondent.

## OPINION

SHEA, Justice.

This case is before the court following the consolidation of three petitions for writs of certiorari.[1] Hasbro Industries, Inc. (Hasbro), a manufacturer in Pawtucket, Rhode Island, seeks a review of a District Court judgment affirming in part a decision of the tax administrator assessing a use tax against it. We affirm in part and reverse in part.

Hasbro challenges the use tax assessed on its purchase for use in its business of five items of property: (1) mechanicals and color overlays, (2) color separations, (3) clay models, (4) a computer-software package and (5) order forms, price catalogs, and brochures.

An agreed statement of facts served as the factual record in the proceedings below. Hasbro manufactures a wide variety of toys, dolls, and games and sells such products throughout the United States. Once Hasbro has designed a particular toy, doll, or game, the next step is to have a box or other packaging designed for the product. Hasbro engages a New York design firm to create mechanical artwork with attractive and eye-catching packaging designs that will effectively promote the sale of its products.

The first disputed item consists of the mechanicals and color overlays that were created at the end of an elaborate four-step process involving much interplay between Hasbro and the design firm.[2] In the first step of the process, Hasbro meets with the design firm to familiarize the firm with the product to be packaged. After an extensive review of artistic-design proposals and marketing and production requirements, the design firm presents to Hasbro its preliminary packaging-design concepts. Upon approval, the design firm proceeds to the second step, the preparation of a three-dimensional full color, comprehensive mockup of the package. This involves design refinements and a further review of the design by Hasbro. The third step consists of continued design refinements, layout of all packaging panels, and typography and lettering specifications. In the fourth and final step of the process, the design firm prepares the final mechanical artwork, mechanicals and color overlays, for presentation to Hasbro.

The second disputed item comprises the color separations that are created by a highly skilled photographer (color separator), who fits the image depicted on the overlay to the mechanical with a high resolution lens and a photo enlarger. The resulting negative is trimmed and cropped, if necessary, and a print (color photograph) is prepared that is the exact size of the mechanical and includes all lettering and logos. The color separator then photographs the print through four different filters to separate the print into the primary hues of red, yellow, and blue, plus black. These color-separation negatives are forwarded to Hasbro for its use in fabricating the print-

---

1. All three petitions relate to the same case and the same issues on which judgment was entered August 27, 1982, in District Court, Sixth Division.

2. "Mechanicals" are large pieces of cardboard that show the size of the packaging, the layout of the artwork, and the location of the lettering. "Color overlays" are four large sheets of film, separately colored black, red, blue, and yellow, that produce the complete artwork when they are superimposed on one another.

ing plates. After the printing plates are fabricated, the mechanicals, color overlays, and color separations are of no further use in the production process.

The third disputed item consists of clay models that are purchased by Hasbro from an independent model sculptor, who sculpts clay facial images for use in the preliminary stages of manufacturing a doll. From the clay model, Hasbro makes a metal mold that is used to make doll heads out of plastic using a rotational molding process. After these sculpted clay models are used to produce the production mold, they have fulfilled their function and are of no further use in the production cycle because only the metal molds are required in the manufacturing process.

The fourth disputed item is the computer-software package, an Extracto program, purchased by Hasbro to permit it to extract data from its existing disks or tape files without having to write a separate program. This ready-to-execute program is used to assemble and reassemble Hasbro's raw data in a wide variety of ways for use in the preparation of payroll, sales, financial, and other reports.

The fifth disputed item is composed of order forms, catalogs, and brochures that Hasbro purchased from in-state suppliers and subsequently distributed out of state.

■ Initially, we note that our review of the District Court's decision affirming the use-tax assessment on these five items of property is limited to a review of any questions of law involved. G.L.1956 (1984 Reenactment) § 42–35–16. Such review "properly includes questions of law involving the applicability of a statute to undisputed facts." *George, Inc. v. Norberg,* R.I., 444 A.2d 868, 870 (1982).

Hasbro contends that the State Tax Division and the District Court erred in upholding the auditor's treatment of the entire amount paid to the design firm as payment for tangible personal property that is subject to a use tax. Hasbro argues that their determination was erroneous as a matter of law because (1) its payments to the design firm were for nontaxable services, the transfer of the mechanicals and color overlays being merely incidental to those services, and (2) those payments were exempt under G.L.1956 (1980 Reenactment) § 44–18–30(H), as payments for property consumed in the manufacturing process.[3]

Hasbro relies on the "real object" test expounded upon in *Statewide Multiple Listing Service, Inc. v. Norberg,* 120 R.I. 937, 392 A.2d 371 (1978), to support its argument that its payments to the design firm were for nontaxable services. In *Statewide Multiple Listing Service,* we noted that "where the real object of the transaction is the product of the service, it is a taxable transfer", but "[w]here the real object of the transaction is the service rendered and the transfer of personal property is merely incidental to the service, the transaction is not taxable." *Id.* at 942, 392 A.2d at 374.

■ It is undisputed that considerable expertise and effort went into producing the mechanical artwork and that the value of the expertise and effort exceeded the component value of the resultant tangible personal property. However, this does not mean that the transfer of personal property was merely incidental to the service rendered. "The fact that property the subject of a sale is custom made and that labor is the principal cost factor does not establish the contract as one for rendition of services rather than sale." *Community Telecasting Service v. Johnson,* 220 A.2d 500, 503 (Me.1966); *see also Voss v. Gray,* 70 N.D. 727, 734, 298 N.W. 1, 4 (1941).

■ The critical test is the "real object" of the transaction. Since the "real object" of Hasbro's transaction with the design firm was to obtain as an end prod-

---

**3.** Hasbro's further arguments that those payments were exempt under G.L.1956 (1980 Reenactment) § 44–18–30(W) and/or partially exempt under the division's regulations pertaining to preliminary artwork need not be addressed.

uct the mechanical artwork from which its packaging could be fabricated in a finished form for ultimate sale, the transaction is not established as a nontaxable "service" transaction. Incidentally, it is worth noting that our statute implicitly provides for the taxation of such "mixed" transactions. General Laws 1956 (1980 Reenactment) § 44–18–12, which defines " '[s]ale price' " as the total amount for which tangible property is sold, includes "[a]ny services that are a part of the sale, valued in money * * * ."

■ Although we reject the claim that the sale of the mechanicals and color overlays is a nontaxable "service" transaction, we agree with Hasbro that this purchase as well as the purchases of the color separations and clay models are exempt from taxation under § 44–18–30(H). Section 44–18–30(H) exempts from taxation tangible personal property that "is consumed directly in the process of manufacturing for resale tangible personal property * * * provided, however, that such consumption occurs within one (1) year from the date such property or service is first used or applied in such process of manufacturing." The pertinent portion of § 44–18–30(H) reads as follows:

" 'Consumed directly' means destroyed, used up, or worn out to the degree or extent that such property cannot be repaired, reconditioned, or rendered fit for further manufacturing use.

'Consumed directly' shall not mean or include mere obsolescence."

The tax administrator argues that *Brier Manufacturing Co. v. Norberg,* 119 R.I. 317, 377 A.2d 345 (1977), precludes us from exempting these purchases from taxation under § 44–18–30(H) because "consumed directly" does not include or mean mere obsolescence. In *Brier* we referred to obsolescence as the "process * * * whereby property, because of causes other than physical deterioration, loses its economic usefulness to the taxpayer." *Id.* at 322,

377 A.2d at 349 (quoting 4 Mertens, *The Law of Federal Income Taxation* § 23.104 & n. 24 (rev. ed. 1973) ). We concluded that "consumed directly" under the definitional language "clearly refers to the type of consumption directly resulting from an item's physical and not economic unfitness for use in the manufacturing process." *Id.*

*Brier,* however, is distinguishable on its facts from the case before us. In *Brier* the molds had lost their economic value within one year of initially being used in the manufacturing process because of a lack of market demand for the product the molds produced. The molds, however, were still physically fit for further manufacturing use. Having lost their "economic usefulness" owing to the extrinsic factor of inadequate market demand, the molds were merely obsolescent, but not "consumed" within the meaning of § 44–18–30(H). *Id.* at 321, 377 A.2d at 348.

In contrast to the molds in *Brier,* Hasbro's mechanicals and color overlays, color separations, and clay models were "used up." After being used to produce the printing plates and metal molds, their physical usefulness was completely at an end irrespective of consumer demand. Thus, these items did not become obsolete because the termination of their useful life was not contingent on external factors such as loss of trade or changes in the art, but rather on the completion of their limited and sole intended function. *See Real Estate Land-Title & Trust Co. v. United States,* 309 U.S. 13, 16, 60 S.Ct. 371, 372, 84 L.Ed. 542, 546 (1940). Since the use of these items was inherently finite—they ceased to have any function after the printing plates and metal molds came into existence—they were clearly "consumed" in the manufacturing process and therefore are exempt from taxation.[4]

■ Nonetheless, the tax administrator contends that the mechanicals, color overlays, color separations, and clay models are

---

**4.** There is no dispute that the printing plates and metal molds are created within one year of

Hasbro's acquisition of the mechanicals, color overlays, color separations, and clay models.

not exempt in view of the specific exclusion from exemption in subparagraph (iii) of § 44–18–30(W). Subparagraph (iii) provides that

"machinery used directly * * * in the actual manufacture * * * of any tangible personal property which is not to be sold and which would be exempt under paragraph (H) * * * shall not be exempt * * even though * * * an integral * * * part of a continuous production flow or manufacturing process * * *."

However, since the mechanicals, color overlays, color separations, and clay models do not constitute "machinery," § 44–18–30(W) is inapplicable.

Hasbro next contends that the Tax Division and the District Court erred as a matter of law in upholding the auditor's treatment of its purchase of the computer-software package as payment for tangible personal property that is subject to a use tax because the computer software constituted (1) a nontaxable service, the transfer of the disk and punch cards bearing the written instructions being merely incidental to those services, and (2) intangible personal property.

■ Hasbro's contention that its Extracto computer program falls into the category of a nontaxable service is without merit. As a ready-to-execute program, it was prepared for general or repeated use and could be transferred to a buyer's computer with little or no modification. It is clearly a canned program. Being a fungible item, the service content of a canned program is virtually nonexistent.[5] Therefore, since there is no service to which the transfer of the computer-software program can be con-sidered incidental, Hasbro's assertion to the contrary fails.[6]

■ Use taxes are imposed on the storage, use, or other consumption in this state of tangible personal property. G.L.1956 (1980 Reenactment) § 44–18–20. Section 44–18–16 defines "tangible personal property" as "property which may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses."

Hasbro argues that the software program is not "perceptible to the senses" because it consists of invisible, inaudible electronic impulses that instruct the computer to display stored data in a particular manner. Thus, Hasbro concludes that the program qualifies as intangible personal property that is not subject to the use tax. We disagree.

The program, which consists of the disk and punch cards, can be seen, weighed and measured and is perceptible in other ways to the senses. Although Hasbro is correct to say that invisible, inaudible electronic impulses instruct the computer, it is nevertheless true that these impulses do not simply float in space but are conveyed to the computer by way of the software program.[7] *Comptroller of the Treasury v. Equitable Trust Company*, 296 Md. 459, 484, 464 A.2d 248, 261 (1983). The software program in this case is no different from other taxable personal property such as films, videotapes, books, cassettes, and records whose value lies in their respective abilities to store and later display or transmit their contents. *Chittenden Trust Co. v. King*, 143 Vt. 271, 274, 465 A.2d 1100, 1102 (1983). Therefore, we hold that the software program purchased by Hasbro

5. "To be a service, work must be performed for the benefit of a particular customer. Designing a generally marketable product is not a service because the cost of design is spread among all customers, and their identity is unknown at the time the product is designed." Note, *Software and Sales Taxes: The Illusory Intangible*, 63 B.U. L.Rev. 181, 212 (1983).

6. It is worth noting that the majority of states with a sales-and-use tax follow a practice of taxing both custom and canned programs. Note, *Sales and Use Tax of Computer Software— Is Software Tangible Personal Property?* 27 Wayne L.Rev. 1503, 1531–36 (1981).

7. The program's function is analogous to that of a stencil: it is used to transfer a pattern of coded instructions that alter the internal structure of the computer and enable it to perform its task. Note, 63 B.U.L.Rev. at 204 & 205, n. 138.

constitutes "tangible personal property" for purposes of the state use tax.

■ Finally, Hasbro argues that the order forms, catalogs, and brochures purchased from Rhode Island vendors for distribution outside the state are exempt from the use tax under § 44–18–20 because they are not stored, used, or otherwise consumed in this state within the meaning of the statute. Section 44–18–9 defines the term "storage" as including "any keeping or retention in this state, *except for * * * subsequent use solely outside this state,* of tangible personal property purchased from a retailer." (Emphasis added.) Since Hasbro's only conduct involved the storage of this property that was subsequently used solely outside this state, Hasbro is exempt from the use tax on this transaction. *See Mart Realty, Inc. v. Norberg,* 111 R.I. 402, 303 A.2d 361 (1973).[8]

Therefore, we hold that the purchases of the mechanicals, color overlays, color separations, and clay models are exempt from the use tax under § 44–18–30(H). The software program is subject to the use tax because it constitutes "tangible personal property" and is not a service. The order forms, catalogs, and brochures are exempt from the use tax under § 44–18–20.

Hasbro's petition for certiorari is granted in part. The judgment entered in the District Court is reversed in part and affirmed in part, and the papers certified to this court are ordered returned to the District Court with our decision endorsed thereon.

---

**8.** The tax administrator is correct in asserting that Hasbro's purchase of this property involved a completed sale by a vendor in this state that is subject to the sales tax. Nevertheless, the applicability of this sales tax is not before us because no such tax was assessed against Hasbro.