DECISION
This is an appeal from a July 20, 1998 decision of the City of Cranston Zoning Board of Review (the Zoning Board). Alfred Carpionato (plaintiff) appeals the Zoning Board's granting of variances to Cedar Crest Nursing Centre, Inc. and CC Acquisition Corp. (defendants). In its decision, the Zoning Board approved the defendants' request for dimensional variances from the provisions of § 30-17 and § 30-18 of the Code of the City of Cranston. The plaintiff now seeks reversal of the Zoning Board's decision. Jurisdiction is pursuant to G.L. 1956 §45-24-69.
 Facts/Travel
On June 10, 1997, the defendants applied to the Zoning Board for dimensional variances to enable them to construct a congregate living facility which would exceed the height restrictions and parking lot setback requirements of § 30-17 and § 30-18 of the Code of the City of Cranston. The lots upon which the defendants proposed to construct the congregate living facility are located at 125 Scituate Avenue, in the City of Cranston, and are designated as Assessor's Plat 37, Lots 611 and 693. The two lots are located in an A-12 district and together comprise approximately 10.5 acres of land. A nursing home is currently located on a portion of Lot 611. Although Lot 693 is owned by Cedar Crest Nursing Centre, Inc. and Lot 611 by CC Acquisition Corp., the defendants indicated in their application that they intended to merge the lots if their variances are granted.
Pursuant to § 30-42 of the Code of the City of Cranston, plaintiff, as an owner of real property located within a 400 feet radius of the property that was the subject of the application, received notice of the application and of the scheduled hearing. On July 1, 1997, the Planning Commission unanimously voted to recommend the approval of the application based upon findings of fact. A properly advertised hearing on defendants application for dimensional variances regarding the property in question was then held on July 30, 1997. At this hearing, the Zoning Board heard various experts testify in support of and against the application.
On behalf of the defendants, the Zoning Board heard testimony from Robert Douglass, an expert in nursing home construction; David Presbrey, an expert in architecture and design; and James Sloan IV, a real estate expert who is familiar with nursing home and assisted living facilities. These witnesses testified that the variances sought were the least amount of relief necessary from the terms of the Ordinance, that the relief sought would not alter the general character of the surrounding area, would not impair the intent or purpose of the Ordinance or Comprehensive Plan, and that the relief sought resulted from the unique characteristics of the subject property.
On behalf of the plaintiff, the Zoning Board heard testimony from Paul Cunningham and Ralph Cataldo. Mr. Cunningham, a registered real estate broker and an expert qualified in the area of real estate and zoning, testified that the defendants' proposal would be out of character and inconsistent with the surrounding neighborhood and that, in his professional opinion, the defendants could build a congregate care facility within the terms of the Ordinance. Mr. Cataldo, a registered professional engineer and an expert in the area of site preparation and engineering, testified that the buildable area upon the subject property could be expanded by moving the utility easement so as to enable the defendants to construct the congregate living facility within the terms of the Ordinance.
After the Zoning Board heard the testimony and inquired of the experts, and without having voted on the application, the Zoning Board's chair asked whether there was any other person wishing to be heard and since there were none, "declare[d] the public hearing portion of the application closed." By notice of decision dated the same day as the hearing, the Board notified the interested parties, including the plaintiff, that the application had been approved.
The Zoning Board also made the following findings:
 "(1) The hardship from which the applicant seeks relief is due to the unique characteristics of the subject property, and is not due to a physical or economic disability of the applicant;
 (2) The hardship from which the applicant seeks relief is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize financial gain;
 (3) The granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan which the ordinance is based;
 (4) The relief granted is the least relief necessary; and
 (5) The hardship suffered by the owner of the subject property if the dimensional variance is not granted will amount to more than a mere inconvenience."
Thereafter, the plaintiff appealed the Zoning Board's decision to this Court.
After a review of the entire record, this Court found that the Zoning Board's decision was not susceptible to judicial review. "[T]he board's decision [was] otherwise lacking in content sufficient to facilitate judicial review- `it is conclusional, but not factual; it recites supposed legal principles as justification for what it permits, but does not set out the supporting grounds without which there can be no justification. . . .'" Decision at 4 (citing Coderre v. ZoningBoard of the City of Pawtucket, 102 R.I. 327, 331, 230 A.2d 247, 249 (1967)). This Court therefore remanded the case back to the Zoning Board so as to allow the Zoning Board to clarify its decision. This Court instructed the Zoning Board to prepare a decision containing findings of fact and conclusions of law. Decision at 6. This Court also noted that "if there [had] been any changes in the composition of the board since the time [the] matter was initially heard, it would have to be reconsidered by the current board before a proper decision may be rendered." Id.
Since the composition of the Zoning Board had changed, the current board heard the case at a public hearing on July 2, 1998. At this hearing, the Zoning Board heard expert testimony in support of and against the application. Mr. Douglass, Mr. Presbrey, and Mr. Sloan again testified on behalf of the defendants, while Mr. Cunningham and Mr. Cataldo testified for the plaintiff. The substance of these experts' testimony was nearly identical to the testimony elicited at the hearing on July 30, 1997. The defendants' experts again testified that the variances sought were the least amount of relief necessary from the terms of the Ordinance, that the relief sought would not alter the general character of the surrounding area, that the relief sought would not impair the intent or purpose of the Ordinance or Comprehensive Plan, and resulted from the unique characteristics of the subject property. The plaintiff's experts then testified to the contrary. After hearing the testimony presented, the Zoning Board's chair asked if anyone else wished to be heard and then declared the public portion of the application closed. After reviewing the application and the testimony elicited at the hearing, the Zoning Board voted to grant the defendants' application.
The plaintiff filed a timely appeal from the Zoning Board's decision to this Court on August 6, 1998. On appeal, the plaintiff argues that (1) the decision was not made at a public hearing; (2) the actions of the board violated the Open Meeting Law (G.L. 1956 42-46-1 et seq.); (3) the board made certain findings which were "contrary to law, legally irrelevant and contrary to the record"; (4) that the request for the dimensional variance should have been denied since the relief approved was not supported in fact or law; (5) that the Zoning Board did not reject the testimony of the plaintiff's experts; and (6) that there is no record of deliberations. The defendants argue that (1) the Zoning Board's decision was rendered at a public meeting; (2) that the Zoning Board correctly found that the requirements for a dimensional variance were met; and (3) that Section 30-12 of the City of Cranston Ordinances does not preclude the Zoning Board from considering applicant's request since neither a nursing home nor congregate living facility is a dwelling unit or residential building.
 Standard of Review
This Court possesses appellate review jurisdiction of a zoning board of reviews decision pursuant to G.L. 1956 §45-24-69 (D), that states
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court, when reviewing the decision of a zoning board of review, must examine the entire certified record to determine whether substantial evidence exists to support the finding of the zoning board of review. Salve Regina College v. Zoning Bd. ofReview, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. ZoningBd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record.Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v.Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 No Violation of the Open Meetings Law
Section 30-42 (f) of the Code of the City of Cranston provides that "[a]ll hearings of the board shall be open to the public. Such public hearings shall be conducted not earlier than 6:00 p.m. Furthermore, all votes of the board adopting a decision or taking other official action shall be taken at a public meeting." Section 42-46-3 of the Open Meetings Law mandates that "[e]very meeting of all public bodies shall be open to the public unless closed pursuant to §§ 42-46-4 and 42-46-5." The plaintiff argues that the Zoning Board's decision was illegal since the vote to approve the application was taken behind closed doors in violation of these provisions. As the basis for his argument, the plaintiff relies on the fact that the Zoning Board's chair closed the public portion of the application after all interested individuals were given the opportunity to speak.
The record evidences that the decision of the Zoning Board was rendered at a public hearing, and this Court finds same did not violate the Open Meetings Law. The Zoning Board gave written notice of the time and place of the hearing, along with an explanation of the nature and purpose of the hearing, to the petitioners and all owners of real property within a radius of four hundred feet of the subject property. The Zoning Board afforded all the interested parties an opportunity to present their contentions, after which the Zoning Board then closed the public portion of the hearing. By closing the public portion of the hearing, the Zoning Board established that no more testimony would be considered and that they were ready to begin deliberations so they could vote on the applications. The Zoning Board then met in a public session to consider and vote on the applications that were before them. No member of the public was required to leave and, in fact, the defendants and other parties whose applications were before the Zoning Board remained. Neither the Code of the City of Cranston nor the Open Meetings Act grants the public the right to comment or participate in the Zoning Board's deliberations or vote on matters before the Zoning Board. Rather, § 42-46-7 (b), entitled "Minutes," states that "[a] record of all votes taken at all meetings of public bodies, listing how each member voted on each issue, shall be a public record and shall be available, to the public at the office of the public body within two (2) weeks of the date of the vote. . . ." Therefore, the decision of the Zoning Board did not violate the provisions of the Ordinance or the Open Meetings Law since it was rendered after a public meeting and not as the result of a private session held behind closed doors.
The Application for a Variance
The plaintiff further argues that this Court should reverse the board's decision because it contains errors of law. Specifically, the plaintiff characterizes both the existing nursing home and the congregate living facility as "residential buildings" or "dwelling structures" and, as such, the plaintiff contends that the proposed construction would violate § 30-12 of the Code of the City of Cranston which prohibits more than one dwelling structure or residential building per lot. As a result, the plaintiff maintains that the applicants required a use variance, in addition to the dimensional variances that the board granted.
Alternatively, the defendants assert that the Zoning Board was presented with the opportunity to determine whether § 30-12 was applicable to this matter and that the Zoning Board correctly found that it did not. According to the defendants, neither a nursing home nor a congregate living facility could be viewed as a residential building or dwelling structure, and the ordinance provision is therefore inapplicable. Furthermore, the defendants contend that even if both a nursing home and congregate living facility were deemed to be "residential buildings," the prohibition of § 30-12 was inapplicable since the additional performance requirements for said facilities specifically permit multiple dwellings on one lot. Lastly, the defendants assert that a variance from § 30-12 was inherent in the Zoning Board's approval of their application and there is substantial evidence in the record to support a variance from § 30-12. Consequently, the defendants contend that there was no need to seek a use variance since § 30-12 was inapplicable and regardless, the Board inherently granted one without the defendants asking when the application was approved.
Although both nursing homes and congregate living facilities are permitted uses in an A-12 zoning district, § 30-12 of the Code of the City of Cranston prohibits more than one residential building per lot. Section 30-12 of the Code of the City of Cranston, entitled "More Than One Dwelling Structure on any Lot Prohibited," provides in pertinent part that "[i]n no case shall there by more than one main residential building and its accessory building on one lot in the A-80, A-20, A-12, A-8, A-6, and B-1 districts. . . ."
Section 30-12 is relevant to this matter since the property is located in an A-12 district and the defendants have stated that should the Zoning Board grant their request for a dimensional variance, they intend to merge the lots thereby resulting in the nursing home and the congregate living facility being situated on one lot. Furthermore, the construction plans submitted by the defendants propose to construct a portion of the congregate living facility on Lot 611. Therefore, there would technically be two buildings on Lot 611 even before the proposed merger transpires. Accordingly, this Court must determine whether the definitions of the terms "residential building" and "dwelling structure" encompass nursing homes and congregate living facilities.
 Nursing Homes and Congregate Living Facilities
The terms "residential building" and "dwelling structure" are not defined in the Ordinance. However, § 30-3 of the Code of the City of Cranston defines a nursing home as "[a]n institution that is licensed or approved by the State of Rhode Island to provide health care under medical supervision for twenty-four or more consecutive hours to two or more patients who are not related to the governing authority or its members by marriage, blood, or adoption." Furthermore, a congregate living facility is defined as "[a] facility providing living accommodations and communal facilities for elderly persons . . . Services include daily meals, housekeeping, laundry, and transportation to retail stores and personal medical care. . . ."
Relying on the definition of "dwelling unit" set out in § 30-3, the defendants claim that the nursing home and congregate living facility are exempt from § 30-12 due to their failure to provide "complete and independent living facilities," "permanent provisions for eating, cooking, and sanitation," or a "separate means of ingress and egress." According to the defendants, a "nursing home is an institutional facility providing health care under medical supervision" and in support of this argument, the defendants refer to the fact that a nursing home is treated as a commercial use under the Code of the City of Cranston since the operation of nursing homes is permitted in any of the City's commercial districts. Furthermore, the defendants claim that the language of the congregate living facility ordinance demonstrates that the Planning Board intended that such a facility not be treated as a residential building within the meaning of § 30-12.
"It is `the function and duty of this court to construe statutes' so as `to effectuate the intent of the legislature' by examining "the language of the statute itself, [and] giving the words of the statute their plain and ordinary meaning." The Townof East Greenwich v. James O'Neil, 617 A.2d 104, 108 (R.I. 1992) (quoting D'Ambra v. North Providence School Committee,601 A.2d 1370, 1374 (R.I. 1992)). In construing a statute, the courts should look to the language, nature, and object of the statute, in addition to giving the words of the statute their plain and ordinary meaning. See State v. Lake, 507 A.2d at 1351-1352 (citing Howard Union of Teachers v. State, 478 A.2d 563 (R.I. 1984); Brier Manufacturing Co. v. Norberg, 119 R.I. 317, 322,377 A.2d 345, 348 (R.I. 1977)). Since the legislative intent is considered the primary factor in statutory construction, a statute may not be construed in a manner that results in absurdities or defeats its underlying purpose. See Lake, 507 A.2d at 1352.
It is well settled that the rules governing statutory interpretation are equally applicable to the interpretation of an ordinance. See Mongony v. Bevilacqua, 432 A.2d 661 (R.I. 1981);Town of Warren v. Frost, 111 R.I. 217, 301 A.2d 572 (1973). Therefore, an ordinance must be construed in a manner consistent with its stated intent and not in a manner which will result in absurdities or defeat the underlying purpose. HydronLaboratories, Inc. v. Department of Attorney General,492 A.2d 135 (R.I. 1985); Valley Resources, Inc. v. South County Gas Co.,486 A.2d 1076 (RI. 1985); State v. Gonsalves, 476 A.2d 108 (R.I. 1984).
With those principles in mind, this Court finds that a fair reading of the Ordinance leads to the conclusion that the drafters intended that the prohibition of more than one "residential building" or "dwelling structure" on a lot, which is located within one of the listed residential zones, to apply to structures such as nursing homes and congregate living facilities. Additionally, our Supreme Court has stated, though in regard to tax statutes, that "[a]s a general proposition of statutory construction, titles do not control the meaning of statutes . . . Regardless of the nomenclature used by the General Assembly, it is the nature of the tax itself that determines whether the tax is an excise tax or a property tax." Cohen v.Harrington, No. 97-165-Appeal, Slip Op. at 4 (R.I., filed Jan. 8, 1999). (citing Sands, Statutes and Statutory Construction § 47.03 (4th ed. 1973)). Similarly, here it is the nature of the Ordinance, not the title given to a specific provision, that controls and dictates whether nursing homes and congregate living facilities are residential buildings under the provision of § 30-12. In an A-12 district, the Ordinance is intended to preserve the residential nature of the surrounding community. By permitting both nursing homes and congregate living facilities in an A-12 district, the drafters included these structures as residential buildings. It would be absurd for this Court to find that two sizable structures, such as a nursing home and congregate living facility, are permitted on one lot in an A-12 district, yet, two single family homes are not.
Both a nursing home and a congregate living facility could be viewed as residential buildings under the Ordinance. The additional performance requirements for the congregate living facility refers to the fact that there shall not be more than one "dwelling unit" per fifteen hundred square feet of gross lot acre. Furthermore, even though the term "dwelling unit" is not associated with the nursing homes in any specific provision of the Ordinance, the fact remains that a nursing home could be viewed as a residential building or dwelling unit since to a handicapped elderly person who resides at the nursing home, the nursing home is very often their home for the rest of their life.See Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1102 (3rd Cir. 1996), (holding that a nursing home is a dwelling under § 3602 (b) of the Fair Housing Amendments Act of 1988).
Furthermore, the defendants argue that the specific performance requirements for congregate living facilities specifically permit multiple dwellings on one lot. The section to which the defendants refer, § 30-18 (1)(2)(c), permits "one dwelling unit per 1,500 square feet of gross lot area." The defendants contend that since a dwelling unit is defined in § 30-3 as "a structure or portion thereof," multiple dwellings structures are permitted on lots where congregate living facilities are located.
The additional performance requirements were created to control the size of the facility to be built so as to ensure that the lot was capable of supporting the number of units in the facility. If the drafters of § 30-12 intended multiple dwellings be permitted on the same lot as a congregate living facility, they would have explicitly stated so as in the case of residential buildings used for religious or educational purposes. Section 30-12 currently states that the regulation shall not apply to residential buildings used for religious or educational purposes.
Therefore, this Court finds that both a nursing home and congregate living facility are residential buildings or dwelling units under the provisions of § 30-12. As such, § 30-12 necessitates that the defendants obtain a use variance to enable them to construct the congregate living facility.
 Use Variance
Section 45-24-31(61)(a) of the Rhode Island General Laws defines a use variance as "[p]ermission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance." The requirements for a use variance in the instant case are set forth in § 30-28 of the Code of the City of Cranston and they mirror those contained in G.L. 1956 § 45-24-41. Section 30-28 (b) in pertinent part, provides:
 "(b)In granting a variance, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting hereto those physical disabilities addressed in 45-24-30 (16) herein;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 (c) The zoning board of review shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that: (1) in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. . . ."
The defendants contend that the Zoning Board granted a use variance from the provisions of § 30-12 when the Zoning Board approved the application. According to the defendants, the fact that they did not explicitly seek a variance from § 30-12 does not preclude the Zoning Board from granting a variance therefrom. See Taft v. Zoning Board of Warwick, 76 R.I. 443, 447 (R.I. 1950). The defendants argue that substantial evidence exists on the record to support the granting of a variance from § 30-12 "in that all of the evidence submitted with reference to variances from the building height and parking lot set back restrictions also supports a variance from § 30-12." There is no substantial evidence of record to demonstrate that the defendants have satisfied the standard for a use variance.
It is well settled that in zoning cases, a zoning board should "pinpoint the specific evidence upon which [it] base[s] [its] findings." Hopf v. Board of Review of Newport,102 R.I. 275, 230 A.2d 420, 428 (1967). The law requires this minimal showing so that a reviewing court can know whether the decision rendered "bears a substantial relation to the public interest, and whether it is consistent with an exercise of reasonable discretion, or instead is an arbitrary and unreasonable exercise of the Board's power." Coderre v. Zoning Board of Review,102 R.I. 327, 230 A.2d 247, 249 (1967).
In order to obtain a use variance, an applicant must demonstrate to the board that literal application of the zoning ordinance would completely deprive the landowner of all beneficial use of his or her property. Almeida v. Zoning Board ofReview of the Town of Tiverton, 606 A.2d 1318, 1320 (Ri. 1992). Furthermore, an applicant may not rely on bald assertions of economic hardship, but must present truly probative evidence to the zoning board, such as cost data or financial statements.Gaglione v. DiMuro, 478 A.2d 573, 576 (R.I. 1984). "A `mere showing of a more profitable use that would result in a financial hardship if denied' does not satisfy the requirements for obtaining a use variance." Rhode Island Hospital Trust NationalBank v. East Providence Zoning Board of Review, 444 A.2d 862, 864 (R.I. 1982).
In the instant case, the Zoning Board found that the proposed use satisfied the criteria set forth in § 30-28 (b)(1)-(4). Although there was conflicting evidence presented concerning whether the criteria had been satisfied, the Zoning Board found the defendant's experts to be more credible and, therefore, accepted their opinions. Where there is conflicting testimony from equally qualified experts and substantial evidence exists on both sides of the controversy, the better rule is to limit the extent of judicial review of the zoning board's decision; the board, which had before it the individual witnesses and had the opportunity to judge their credibility, was in a better position than the court to resolve the conflict. Mendonsa v. Corey,495 A.2d 257, 263 (R.I. 1985); See also G.L. 1956 § 45-24-69. However, as required by § 30-28 (c), the Zoning Board did not make any explicit findings that the subject land could not yield any beneficial use if it was required to conform to the provisions of § 30-12, and no testimony was elicited regarding the same.
The Zoning Board, in its decision, found that the hardship the defendants would suffer amounted to more than a mere inconvenience in that there is no other reasonable alternative to enjoy the legally permitted beneficial use of the Property as a congregate living facility. This is the standard for a dimensional variance and, as such, does not constitute probative and substantial evidence on the record which establishes that the proposed use variance is necessary for the beneficial use of the property. The standard for a use variance requires a deprivation of all beneficial use of the property. Almeida, 606 A.2d at 1320 (emphasis added)
A careful review of the record reveals a lack of evidence to support the conclusion that the use of the property for both a nursing home and congregate living facility is necessary for the land and structure to yield any beneficial use. The testimony of record from all the experts concerned is not whether a deprivation of all beneficial use would result, rather whether it would be more than a mere inconvenience to design a permitted use upon the site without the relief that was requested. Furthermore, no financial information of any kind was presented to the Board, nor did either witness offer any testimony regarding actual costs or financial losses that would experienced by the defendants. SeeGaglione, 478 A.2d at 576.
Furthermore, there was evidence of record that the defendants would not be deprived of all beneficial use of the property if not permitted to construct the congregate living facility. The defendants indicated that they intend to merge the two lots and, as such, if the two lots were merged into one, the denial of the request to build the congregate living facility would not result in a deprivation of all beneficial use since the nursing home would still be present on the land, as it has been for over twenty-seven years.
After a review of the entire record, this Court finds that the Cranston Zoning Board of Reviews decision of July 20, 1998, was clearly erroneous in light of the reliable evidence of record and constituted an error of law. As a result thereof, the plaintiffs rights have been prejudiced. The July 20, 1998 decision of the Cranston Zoning Board of Review is hereby reversed in its entirety.
Counsel shall submit an appropriate order for entry.